[L. A. No. 339. Department One.—January 27, 1898.]

JOSEPH C. HEARNE, Respondent, v. M. H. DE YOUNG et al., Appellants.

LIBEL—JUSTIFICATION—IMMATERIAL VARIANCE—PROOF OF CHARGE.—A defendant in an action of slander or libel is not required to justify every word of the defamatory matter, but it is sufficient if the substance, gist, or sting of the libelous charge be justified, and immaterial variances and defects of proof upon minor matters are to be disregarded if the substance of the charge be justified.

ID.—DIVORCE FOR EXTREME CRUELTY—VARIANCE AS TO ACTS OF CRUELTY PUBLISHED—EVIDENCE OF OTHER VIOLENT ASSAULTS.—Where, in publishing a report of the proceedings had in an action for divorce upon the ground of extreme cruelty, in which a decree for the plaintiff had been granted, it was stated that at the trial evidence was introduced showing that the defendant in the divorce suit, who was plaintiff in the libel suit, was a man of most ungovernable temper, and that such incidents as the hurling of dishes at his wife when engaged in argument were referred to by the witnesses for the prosecution, the sting or gist of the charge is that he had assaulted his wife with force and violence, and the hurling of dishes or the fact of argument need not be proved, but evidence of other assaults of any kind upon the wife by the use of force and violence is admissible and sufficient to prove justification of the libel, the manner of the assault, and the means used in making it being mere matters of detail, not material to the substance of the libel.

ID.—EVIDENCE—SECOND PUBLICATION AFTER SUIT BROUGHT—QUESTION OF MALICE.—In an action of libel evidence of a second publication made after suit brought, in support of the same charge, may be given as tending to prove malice in the original publication, and the fact that there may be statements in the second publication looking toward other matters furnishes no reason for rejection of the article as competent and material evidence.

ID.—UNDERSTANDING OF READERS INADMISSIBLE.—Where it does not appear that the readers of a publication alleged to be libelous knew anything of the parties or of the circumstances save what they gathered from the publication, and thus stand in the same position with reference to the publication as the jurors, evidence as to the understanding of such readers as to the meaning of the publication is inadmissible.

ID.—COMMON IMPORT OF WORDS—PROVINCE OF JURY.—The common import of the words of a published article must be applied to test its libelous character, the publishers' intentions are to be gauged by such import, and the reader's understanding of it must be based upon such import; and it is the sole province of the jury to declare its import from the words used.

ID.—EVIDENCE—JOINT ACTION—DECLARATIONS OF CORRESPONDENT—EXPRESS MALICE—INSTRUCTIONS—DAMAGES.—In a joint action against a publisher of

a newspaper and a correspondent, who may be said to be an agent of the
publisher, evidence is admissible to show statements made by the cor-
respondent after the publication of the alleged libelous article, for
the purpose of proving express malice on his part, there being evi-
dence to show a repetition of the libel on the part of the publisher
for the same purpose as against him, and the jury being properly
instructed that subsequent declarations or publications made by one
defendant are not admissible against the other, but that to author-
ize exemplary damages actual malice of each defendant must be
shown, and that there can be no recovery in the joint action except
of the lowest amount of damages to be assessed against either of
them.

ID.—CHARGE OF CRIME—PROOF OF JUSTIFICATION—PREPONDERANCE OF EVI-
DENCE.—Where the libel published charges upon plaintiff the commis-
sion of a crime, it is not necessary that the commission of the crime
be proved beyond a reasonable doubt, but a preponderance of evi-
dence is sufficient to establish a justification.

APPEAL from a judgment of the Superior Court of San
Diego County and from an order denying a new trial. Lucien
Shaw, Judge.

The facts are stated in the opinion of the court.

Lloyd & Wood, William J. Hunsaker, and J. S. Callen, for
Appellant.

E. W. Hendrick, Works & Works, and Herbert Peery, for Re-
spondent.

GAROUTTE, J.—This is an appeal from a judgment based
upon the verdict of a jury awarding to the plaintiff, and jointly
against both defendants, the sum of ten thousand dollars dam-
ages for the publication in the *San Francisco Chronicle* of an
alleged libel. The appeal is also prosecuted from an order deny-
ing a motion for a new trial. The defendant De Young was
the proprietor and publisher, and the defendant Blunt was the
San Diego City correspondent, of the paper. The article in ques-
tion was written by Blunt and forwarded to San Francisco,
where it was published without the knowledge of De Young.

The article deals with two occurrences, happening at different
times and different places. It opens with a statement of fact
that in an action for divorce, brought by the wife of the plain-
tiff upon a complaint charging extreme cruelty and failure to
provide, a decree had been rendered in her favor. Among other

things, the article recited the following: "At the trial, evidence was elicited showing the doctor to be a man of most ungovernable temper, the use of profane and abusive language being one of the offenses charged, but such incidents as the hurling of dishes at his wife when engaged in argument, were referred to by witnesses for the prosecution." In the second part of the article is found an epitome of the facts concerning the murder of Amos J. Stillwell at Hannibal, Missouri, on the night of December 28, 1888; the article stated that these facts were taken from newspapers published at Hannibal and Kansas City at the time of the murder.

The complaint, after quoting the aforesaid extract from the article pertaining to the divorce proceedings, declares: "That said allegation was false and defamatory; that it was not true that plaintiff ever hurled dishes at his wife when engaged in argument, or at any other time, nor did witnesses, or any of them who gave testimony at such trial, testify that plaintiff ever hurled dishes at his wife." A portion of the article referring to the murder of Stillwell is as follows: "That robbery was not the motive was evident from the fact that nothing of value had been taken. The ax was one belonging to the place, and had been observed a day or two previous by servants near the front door steps in the yard. Dr. Hearne was the family physician, and one of the first to reach the house and assist in waking the servants." Referring to that portion of the publication relating to the murder of Stillwell, the complaint charges: "That the defendants meant thereby, and persons reading said article understood that defendants meant thereby, that this plaintiff had been guilty with other persons of murdering, or of assisting in the murder of, the said Stillwell, the former husband of his wife. And plaintiff alleges that said publication was false and defamatory in this, that it is not true that he had murdered said Stillwell, nor that he assisted in said murder, nor is it true that he had any knowledge of said affair; nor is it true that he was one of the first to reach the house, and it is not true that he assisted in waking the servants."

Defendants filed separate answers, each alleging as to that portion of the publication bearing upon the divorce proceedings: "That the publication aforesaid was a fair and true report with-

out malice, of a judicial proceeding, and of matter said in the course thereof, and this defendant alleges and avers that the same was and is privileged." As to that portion of the publication referring to the murder of Stillwell, defendants, by their respective answers, deny "that this defendant meant thereby, or that persons reading said article understood that defendant meant thereby, that the plaintiff had been guilty with other persons of murder, or of assisting in the murder of said Stillwell, the former husband of plaintiff's wife." Defendants also deny that said publication was false or defamatory, and allege that it was made without malice.

At the trial defendants failed to establish that witnesses in the action of divorce testified that "such incidents as the hurling of dishes at his wife when engaged in argument" occurred. But in support of the truth of that part of the publication defendants offered evidence to the effect that at the trial of the action for divorce the wife, as a witness, testified as follows. "When I received a telegram he would take that and the envelope and poke them in my mouth so I could not breathe, and then give me chloroform." "He took me to the third story of our house and locked the door and told me with terrible oaths that he would kill me, and with that he pinched my arm black and blue from the shoulder to the elbow." "I tried to make him stop, but he would not, and he picked me up and threw me against the foot of the bed so that my limbs were black and blue for weeks after that." "He took his hand and knocked me down on the floor." "During the time this contention was going on he put a pistol in my ear and threatened to shoot me." "He abused me and cursed me and knocked me out of the public hallway with curses." "If I happened to be in his way, or could not entertain him as much as he thought I ought to, he would beat me again." This evidence, under objection of plaintiff's attorney that it did not tend to prove the truth of the charge, was not allowed to go to the jury, and error upon the part of the court in so ruling is the first question before us.

It is well settled that a defendant is not required in an action of slander or libel to justify every word of the alleged defamatory matter; it is sufficient if the substance, the gist, the sting of the libelous charge be justified. Immaterial variances and

defects of proof upon immaterial matters go for nothing, and, if the gist of the charge is established by the evidence, the defendant has made his case. The defendant should be held to a strict accountability for all injury inflicted upon the wronged party; at the same time there is no sound reason to support the proposition that a defendant must prove literally the truth of his publication. It may be said that modern authority has adopted a more liberal rule as to this principle than was applied by the courts in the ancient past. Indeed, there seems to be but little difference between counsel here as to the true doctrine at the present time. The serious trouble arises upon the application of that doctrine. The textwriters substantially agree as to the true rule, and it is well stated by Sutherland on Damages, volume 3, page 2626: "A plea of justification is sustained by justifying so much of the defamatory matter as constitutes the sting of the charge. It is unnecessary to repeat and justify every word of the alleged defamatory matter, if the substance of the charge be justified. If the substantial imputations be proved true, a slight inaccuracy in the details will not prevent a judgment for the defendant, if the inaccuracy does not change the complexion of the affair so as to affect the reader of the article differently than the actual truth would." It is not the mere fact that a difference exists between the published report of the proceeding and the proceeding as it actually occurred, that determines the presence of the libel, but rather, is the difference of a substantial character, and does it produce a different effect?

What is the sting, the gist, the substance of the libel in the article before us? The publication declared that plaintiff had been sued for a decree of divorce, upon the ground of extreme cruelty, and the decree granted. It further stated that at the trial evidence was introduced showing the plaintiff to be a man of most ungovernable temper, and that such incidents as the hurling of dishes at his wife, when engaged in argument, were referred to by the witnesses for the prosecution. It certainly is no part of the sting or gist of the libel that he hurled the dishes at his wife *when engaged in argument*. If the dishes had been hurled by him in sullen silence, the same sting would have been there. Again, it is no part of the sting or gist of the libel that

he hurled *dishes* at his wife when engaged in argument. The same sting would still be there if the articles hurled had been knives or forks, or even chairs. Again, it is no part of the sting, or gist of the libel that he *hurled* dishes at his wife when engaged in argument. The same sting would still be there if he had not hurled the dishes at his wife, but had simply held them in his hand, and, thus holding them, had assaulted her with them. Hence, it appears that neither the fact that the weapons used were dishes, nor that the weapons were hurled, nor that the plaintiff was engaged in argument at the time the weapons were hurled, nor all of these things taken together, form the sting of the libel.

The manner and means used by the plaintiff, as set forth in the publication, are nonessentials in forming the sting of the charge. The sting, the hurt to the plaintiff, is found in the fact that he is charged in the publication by the evidence with having assaulted his wife with force and violence. That is the substance of the libel. The substantial imputation against plaintiff is the evidence of a violent assault upon his wife. The manner of the assault and the means used in making it are mere matters of detail; and statements in that regard do not change the complexion of the affair in any degree to plaintiff's disadvantage in the mind of the reader. Substantially stated, the charge here is that the plaintiff assaulted his wife by hurling dishes at her. Testimony at the divorce trial of an assault of any kind upon his wife, by use of force and violence upon the part of the plaintiff, would prove the charge.

It may be said that the early cases in this country have declared the doctrine to be that the justification should be as full and exact in detail as the charge. (*Torrey v. Field,* 10 Vt. 353.) But in *Boogher v. Knapp,* 97 Mo. 122, it is said: "The report is fair and impartial so far as the plaintiff is concerned, if a *verbatim* report of the proceedings would have the same effect on his character as the report made. The only interest the plaintiff has in the accuracy of the report is that it shall be so far accurate as not to be more injurious to him than a *verbatim* report would be." Possibly, this doctrine is too broadly stated in favor of a defendant. Certainly we are not called upon to apply such a test here in order to support a justification of the truth of

this charge. In *Vail v. Anderson*, 61 Minn. 552, the article
charged plaintiff with having committed an assault with intent
to do great bodily harm. It was alleged that the plaintiff com-
mitted the assault by thrusting a pitchfork into the thigh of one
McClintock. The publisher was held to have justified the truth
of his publication, even though he failed to show that the pitch-
fork penetrated McClintock's thigh, the court holding that an
actual wounding was not necessarily involved in the sting of
the charge. In the case of *Snow v. Witcher*, 9 Ired. 346, the
charge was made that the plaintiff, an unmarried female, "had
lost a little one." This charge was held justified by plea and
proof that the plaintiff was an unchaste woman. The court de-
clared the sting of the charge was the act of criminal intercourse
indirectly declared to have been committed by the plaintiff. In
view of what has been said, it is apparent that the evidence of-
fered by defendants should have been admitted as tending to
support the·truth of the charge, and should have gone to the
jury as bearing upon that issue. The rule we have declared has
no direct precedent in this state, for here the question is a new
one, but it is a rule agreeable to reason, as rendering to both
sides of the litigation full and complete justice.

It is insisted that the court erred in allowing plaintiff to intro-
duce in evidence "a publication of a different nature from the
one complained of, and made at a time subsequent to the com-
mencement of the action." In answer to the first branch of
this contention, upon a comparison of the two publications we
are not prepared to say that they were so dissimilar as to defeat
the introduction of the second in evidence as tending to prove
malice. If the first publication will support the construction
that by it plaintiff is charged as a *particeps criminis* in the mur-
der of Stillwell, then the second publication will support that
charge; and, while there may be statements in the second article
looking toward other matters, such fact furnishes no reason for
the rejection of the article as competent and material evidence
in the case.

Was it error to admit the second publication in evidence,
it having been made subsequently to the commencement of the
action? The law is not at all settled in this country upon the
question. Many very reputable courts have divided as to the

true rule. Mr. Justice Rapallo, in *Frazier v. McCloskey,* 60 N. Y. 338, 19 Am. Rep. 193, attempts upon reason to show why publications made subsequent to the commenceemnt of the action stand upon different ground as to the law from those made prior to the commencement of the action and subsequent to the publication upon which the libelous charge is based. When we consider that these publications are only admissible for the single purpose of proving malice actuating the defendant in the original publication, it is difficult to see substantial reasons why the commencement of the action should be a bar to the admission of publications made thereafter; but, whatever may be the rule in other jurisdictions, in this state we deem the matter settled by the adjudications. In *Norris v. Elliott,* 39 Cal. 72, this court thus declares the rule: "Nor did the court err in admitting proof that the slanderous words were repeated after the action was commenced. This proof was offered and admitted only as proof of malice, and was competent for that purpose." It is also said in *Chamberlin v. Vance,* 51 Cal. 84: "The words testified to by the witness were spoken after the commencement of the action, but, as they were substantially the same as those declared on, they were admissible to prove the *quo animo* with which the alleged slander was originally published. The words spoken after were of similiar import to those spoken before this action was brought. They may be considered a repetition, and so were admissible on the question of malice." In speaking to the issue of malice, we find the following pertinent language used in *Harris v. Zanone,* 93 Cal. 59: "Upon this issue the plaintiff was at liberty to introduce any competent evidence of express malice, as fully as though it had been alleged in her original complaint and denied in the answer of the defendant; and other utterances of words of similar import would be competent evidence for that purpose." There is nothing in *Stern v. Lowenthal,* 77 Cal. 342, in any way weakening the effect of these decisions. It follows that appellant's contention upon this branch of the case is unsound.

It is claimed that the court committed error in allowing witnesses who had read the publication charged as libelous to testify as to their understanding of its meaning. Those witnesses testified their understanding of the article, after reading it, was to

the effect that it charged the plaintiff as a *particeps criminis* in the murder of Stillwell. This character of evidence was not admissible in the case at bar. Tested by the record, the witnesses for plaintiff to this proposition stood exactly as the jurors. They were in no sense learned and scientific men. They knew nothing of the parties or the circumstances, save what they gathered from the publication. Their conclusions were based alone upon a reading of the article, and under such conditions the jurors were as competent to arrive at a correct conclusion as to the meaning of the publication as were these witnesses. In such a case, the law does not allow the judgment of a witness to be substituted for the judgment of the juror.

The alleged libelous article purported to give a brief statement of the circumstances surrounding the murder of Stillwell. After setting out a large portion of the publication in his pleading, plaintiff thereafter alleged that defendants meant by said publications to charge plaintiff as *particeps criminis* in the murder of Stillwell, and persons reading the article so understood the charge. Plaintiff's attorneys in their brief declare that their client's case in this regard proceeds upon the theory that he has been accused by this publication of committing murder, and allege that the accusation is untrue. No ambiguities appear upon the face of the article. Words of common and ordinary import alone are used. No technical or provincial terms are contained therein. The names of all the parties in any way connected with the affair are plainly given. Under such circumstances, the article is libelous *per se*, or it is not libelous at all. If, by fair inferences and deductions from the article, taken as a whole, it can be said that murder is charged against plaintiff, then the article is libelous *per se*. And the deductions and conclusions of any number of witnesses looking toward or against plaintiff's contention in this regard could not aid the jury in arriving at the true deduction from the publication. Of necessity, these witnesses simply stood upon equal footing with the jurors, and their deductions from the publication were no more likely to be correct than the jurors' deductions.

It is unnecessary to enter into a review in detail of the authorities bearing upon this question. It may be conceded that they are not all in line. At the same time the true rule may be said

to be well established. *Smart v. Blanchard*, 42 N. H. 137, is
recognized as sound authority upon this question. The matter
is there fully discussed, and, after a review of the leading authori-
ties from various states promulgated by the courts up to that
time, that court declared the rule as follows: "Upon a careful ex-
amination of the cases, we are inclined to hold that the true rules
to be deduced from them are these: that where the words are
ambiguous and the application doubtful, it must be shown by
plaintiff: 1. That the words were actually used in their action-
able sense, and were applied to the plaintiff; 2. That the hearers
so understood them. . . . . Had it appeared, then, as in the
case before us, that the meaning was ambiguous and the applica-
tion doubtful, and that the witness was one to whom the libel
complained of was published, his understanding of it would be
admissible, especially if it appeared that he was acquainted with
the circumstances to which it related. (*Great care, however,
should be taken that, under the pretense of showing how the hearers
understood an ambiguous expression, the mere opinion of the wit-
ness as to the interpretation of the language should not be re-
ceived.*" (Italics ours.) Notwithstanding the courts have not
all trod the same path upon this question, yet of the many cases
cited by the respondent we fail to find one that reaches the mark
of sustaining the legal admissibility of the evidence here intro-
duced. Indeed, when the article is libelous upon its face, and
the party libeled is named upon the face of the article, there is
no room for the introduction of evidence of witnesses as to their
understanding of its meaning. The California cases cited fully
bear out our position. In *Maynard v. Fireman's etc. Ins. Co.*, 34
Cal. 58, 91 Am. Dec. 672, it is said: "It is not pretended that the
words complained of as a libel are so *per se*, for in themselves they
cannot be said to import anything of a defamatory character con-
cerning the plaintiff." In *Russell v. Kelly*, 44 Cal. 641, 13 Am.
Rep. 169, the name of the plaintiff was not mentioned in the arti-
cle. This language was used: "At the trial, witnesses were called
by the plaintiff to testify that they were acquainted with the par-
ties and familiar with the relations existing between them im-
mediately prior to and at the time the publications were made,
and that on reading the publications they understood the plain-
tiff to be one of the persons referred to." In *Edwards v. San*

*Jose etc. Publishing Soc.,* 99 Cal. 434, 37 Am. St. Rep. 70, the
publication was libelous *per se.* In *Harris v. Zanone, supra,* the
words were libelous *per se,* and this court quoted approvingly the
following from Townshend on Libel and Slander, section 97;
"Where the language published is the vernacular of the place of
publication, it requires no proof that those who heard or read it
understood it. . . . . Where the matter published is in a lan-
guage which he who hears or reads it understands, it will be
assumed he understood it in the sense which properly belongs to
it." In *People v. Collins,* 102 Cal. 345, it is said: "Where the
publication is not a libel on its face, but it is claimed that the
language used has a covert meaning, it is necessary not only to
allege and prove the slanderous or libelous sense in which the
words were used by the defendant, but also that they were under-
stood in the same sense by those to whom they were addressed."
We conclude that the common import of the words of this article
must be applied to test its libelous character. The publisher's
intentions are to be gauged by such import. The reader's under-
standing of it must be based upon such import; and, that being
the fact, it is the sole province of the jury to declare its true im-
port from the words used. By such rule the law fully guards
the liberty of the press, and also at the same time defends the
reputation of the citizen against defamation.

The defendant Blunt, a correspondent of the paper, may be
said to be the agent of his codefendant, the publisher, De Young.
Malice in fact was a material element in the case, as tending to
support exemplary damages. The judgment is a joint judgment
against both defendants. Plaintiff and other witnesses testified
to statements of Blunt made after the publication of the alleged
libelous article for the purpose of proving malice. The admission
of this character of evidence was objected to, but the court ad-
mitted it as tending to prove the express malice of Blunt alone
at the date of the original publication. Appellants insist that
such evidence was not admissible, and that it greatly tended to
the prejudice and damage of the defendant De Young; but, in
view of the law given by the court to the jury bearing upon this
question, we cannot agree with appellants' contention. The law
given by the court was as follows: "Evidence has been admitted
at the trial of declarations made by the defendant Blunt subse-

quent to the publication of the article complained of, and of a subsequent publication by the defendant De Young in the *Chronicle.* This evidence was admitted as tending to show express or actual malice on the part of the defendants at the time of the publication complained of in this action. But I charge you that declarations made by the defendant Blunt after the publication are not competent evidence as against the defendant De Young; nor are subsequent publications, declarations, or acts of De Young, occurring after the publication, evidence as against Blunt, unless he is shown to have participated in them. And, if the plaintiff has failed by competent evidence against him to prove that either of the defendants was actuated by actual malice at the time of the publication, you cannot give the plaintiff exemplary or punitive damages, because your verdict must be a joint one as to the amount, as against both defendants, if you find against both; and proof of actual malice as against one alone will not authorize a verdict for exemplary damages against either." In a subsequent portion of the court's charge this language is used: "You can only give as exemplary damages such sum as you shall believe to be the amount that should be assessed · against that defendant against whom the lowest amount of exemplary damages should be given. If you believe that exemplary damages are justified as against one defendant only, then you must not add anything at all for exemplary damages."

It is insisted that the court committed error in refusing to allow defendant Blunt to testify as to the sources of the information upon which the publication was based, and as to the precautions taken by him in verifying that information. This contention is entirely sound. The defendant should be allowed the fullest latitude in showing his good faith in making the publication. It is said in *Wilson v. Fitch, supra:* "The publisher, in order to rebut the presumption of malice, should be allowed the fullest opportunity to show the circumstances under which the publication was made, the sources of his information, and the motives which induced the publication." The principle here declared was later approved in *Edwards v. San Jose Publishing etc. Soc.,* 99 Cal. 438; 37 Am. St. Rep. 70.

The charge of the court to the effect that if a crime against plaintiff is charged by the publication, then the defendant, in or-

der to show the truth of the charge, must prove beyond a reasonable doubt that the plaintiff committed the crime is unsound as a legal principle. A preponderance of evidence is sufficient to establish a justification. (*Edward v. Knapp*, 97 Mo. 432.) It is probable this error is merely abstract, and not sufficient of itself to justify a retrial of the case.

There are many other assignments of error relied upon by appellants, but, inasmuch as a new trial must be had, many of these questions will probably not arise for the second time. Others are inferentially disposed of by the foregoing views of the court.

The judgment and order are reversed and the cause remanded for a new trial.

Harrison, J., and Van Fleet, J., concurred.

Hearing in Bank denied.

The following opinion was rendered by Garoutte, J., on the petition for a hearing in Bank:

GAROUTTE, J.—The rule of law declared by Department One of this court in the present case as to the degree of evidence necessary to justify the truth of the charge in certain cases of libel, and as declared in the case cited from 97th Missouri, was promulgated without knowledge upon the part of the Department of the decision of this court in *Merk v. Gelzhaeuser*, 50 Cal. 631. If that decision had been before the Department I am satisfied the doctrine there enunciated would have been directly disapproved.