**Harry G. JOHN, Plaintiff,**

v.

**JOURNAL COMMUNICATIONS, INC., Defendant.**

**No. 91–C–780.**

United States District Court, E.D. Wisconsin.

Sept. 9, 1992.

---

Robert E. Sutton, Sutton & Kelly, Milwaukee, Wis., for plaintiff.

Brady C. Williamson and Robert J. Dreps, Lafollette & Sinykin, Madison, Wis., for defendant.

## ORDER

WARREN, Senior District Judge.

On March 15, 1991, Harry John commenced this defamation action in a California state court. In this action, Mr. John seeks $200,000,000 in damages for the harm to his reputation that allegedly resulted from the publication of a news article in the *Wisconsin Magazine* section of the June 10, 1990 edition of *The Milwaukee Journal.* The article reviewed the history of De Rance, Inc., a charitable foundation. This history includes a five-month Milwaukee County Circuit Court trial in 1986 that led to Harry John's removal, for gross misconduct, as a director and trustee of the foundation.

On April 12, 1991, defendant removed this action to the United States District Court for the Central District of California and moved to dismiss it for lack of personal jurisdiction. The California District Court denied defendant's motion to dismiss but granted defendant's alternative motion to transfer the action to this Court pursuant to 28 U.S.C. § 1404.

On September 25, 1991, defendant filed a motion for judgment on the pleadings or, in the alternative, a motion for dismissal. In a *Decision and Order,* issued May 6, 1992, this Court addressed defendant's motion for judgment on the pleadings 801 F.Supp. 199.[1]

In the May 6 *Decision and Order,* this Court granted in part defendant's motion for judgment. This Court found as a matter of law that 25 of the 26 statements referred to in plaintiff's Complaint are not defamatory. This Court held in abeyance determination of defendant's motion with respect to statement # 16. Statement # 16 provides:

"First, Harry would have First Wilshire buy stock in a small company and add it to his personal portfolio. Then the managers, using De Rance money, would buy a large quantity of the company's stock—enough to force up the price of the stock that Harry had just bought for himself and to give First Wilshire the right to demand a seat on the company's board of directors.

When Harry decided to sell his stock and claim his profit, he would sell it to De Rance, the only buyer First Wilshire could find.

Both of these tactics—known as front-running and cross-trading—are illegal.

In some instances, Harry and his money managers would muscle their nominee onto the board of directors of a small company where they intentionally would raise havoc within the company and would keep pressure on until the other directors agreed to buy back the stock—at a premium rate. It's a tactic known as 'greenmail.'

---

1. This Court held in abeyance defendant's alternative motion for dismissal.

First Wilshire claimed to have used the tactic on more than 60 small companies."

Defendant asserted that the *John v. John* trial court's decision and findings of fact conclusively established the truth of the above statement. This Court concurred that the majority of the assertions in statement #16 had been conclusively found to be true by the *John v. John* court. This Court noted that the first paragraph, with the exception of the assertion that Mr. John's scheme gave First Wilshire a right to demand a seat on the company's board of directors, was conclusively found to be true. *See John v. John,* Findings of Fact at ¶¶ 27, 29. This Court also noted that the trial court found the statements contained in the second and third paragraphs to be true. *See id.* at ¶¶ 34–35, 46.

This Court, however, was unable to locate, in the citations of defendants, findings by the *John v. John* court that Mr. John's scheme gave First Wilshire the right to demand a seat on the company's board of directors or that the assertions contained in the last paragraph are true. This Court noted, however, that defendant might be able to cite other portions of the *John v. John* case which demonstrate the truth of these assertions. Accordingly, this Court held in abeyance defendant's motion with respect to statement #16. The Court requested the parties to submit further briefing with respect to this statement. Because the parties' briefing is complete, this Court will now readdress defendant's motion for judgment on the pleadings with respect to statement #16.

In defendants' supplemental brief, it admits that there is an absence of specific findings in *John v. John* supporting the literal truth of every assertion in statement #16. However, defendant argues that this Court should grant its motion with respect to statement #16 because: (1) there is ample factual support for the truth of the statement and (2) the findings of the *John v. John* court justify the "substance, gist and sting" of statement #16.

This Court finds that defendant's first argument, that ample factual support exists for the truth of statement #16, lacks relevance to its motion for judgment of the pleadings. The factual support submitted by defendant would be helpful in a motion for summary judgment. However, because this is a motion for judgment on the pleadings, this Court may not properly look to evidence outside the pleadings.

This Court finds, however, that defendant's second argument, that the findings of the *John v. John* court justify the substance, gist and sting of statement #16, has merit. The "substance, gist and sting" rule is well settled.

> The common law of libel takes but one approach to the question of falsity, regardless of the form of the communication. It overlooks minor inaccuracies and concentrates upon substantial truth. As in other jurisdictions, California law permits the defense of substantial truth, and would absolve a defendant even if she cannot "justify every word of the alleged defamatory matter; it is sufficient if the substance of the charge be proved true, irrespective of slight inaccuracy in the details." ... Minor inaccuracies do not amount to falsity so long as "the substance, the gist, the sting, of the libelous charge be justified." Put another way, the statement is not considered false unless it "would have a different effect on the mind of the reader from that which the pleaded truth would have produced."

*Masson v. New Yorker Magazine, Inc.,* —— U.S. ——, —— – ——, 111 S.Ct. 2419, 2432–2433, 115 L.Ed.2d 447 (1991) (citations omitted); *see also Meier v. Meurer,* 8 Wis.2d 24, 29, 98 N.W.2d 411 (1959). Accordingly, this Court's concern is not whether statement #16 is literally true, but whether any inaccuracies are substantial, in that they produce a different effect on the mind of the reader. The "substance, gist and sting" rule appears reasonable since a statement, which, although not literally true, has no effect on the mind of the reader, causes no injury to the plaintiff.

Courts have applied the "substance, gist and sting" rule in cases similar to this one, where the plaintiff has been conclusively found to have engaged in scandalous activi-

ty substantially similar to that stated by the defendant. In an early application of the rule, the California Supreme Court reversed a libel judgment for a plaintiff who had objected to a newspaper's report that evidence at his divorce trial showed that he had assaulted his wife by hurling dishes at her. *See Hearne v. DeYoung*, 119 Cal. 670, 52 P. 150 (1898). The *Hearne* court found that the absence of any evidence of plaintiff hurling dishes did not defeat the substantial truth of the challenged statement because there was evidence of assault.

> The sting, the hurt to the plaintiff is found in the fact that he is charged in the publication by the evidence with having assaulted his wife. That is the substance of the libel.... The manner of the assault and the means used in making it are mere matters of detail; and statements in that regard do not change the complexion of the affair in any degree to plaintiff's disadvantage in the mind of the reader.

*Id.*, 52 P. at 152. Similarly, the sting of statement # 16 is that Mr. John violated the security laws, not how he did it. Since the *John v. John* court conclusively held that Mr. John engaged in serious violations of security laws, *see John v. John*, Findings of Fact at ¶¶ 20–33, the sting of *The Milwaukee Journal* is substantially supported, and it does not matter whether Mr. John actually engaged in the acts of greenmail asserted in statement # 16.

More recently, the California Court of Appeals applied collateral estoppel and the "substance, gist and sting" rule to preclude litigation over alleged inaccuracies in a defamation case similar to this one. *See Swaffield v. Universal Ecsco Corp.*, 271 Cal. App.2d 147, 76 Cal.Rptr. 680 (1969). The plaintiff in *Swaffield* had been accused of falsifying business records to promote a securities offering involving the merger of his company with another. The plaintiff brought suit over a letter from the president of the merged corporation to a member of its board of directors that led to plaintiff's removal as chairman of the board.

The letter is a rambling informal seventeen-page document in which declarations of fact, assumption, opinion, conclusion and commentary relating to Swaffield's conduct and business character as disclosed by his activities from the time immediately prior to the merger up to the date of the letter are almost inextricably intermingled.

*Id.*, 76 Cal.Rptr. at 688. The letter stated that plaintiff, among other things, (1) consistently hid his company's operating losses in larger contracting jobs, (2) manipulated the allocation of costs to certain jobs, (3) obtained secret profits from sales of materials to companies in which he owned a substantial interest, (4) failed to disclose the common ownership of these companies, (5) was guilty of incompetence and poor management, (6) was uncooperative, (7) made excessive salaries, (8) condoned thefts of his company's funds by certain employees and (9) realized personal gain from his company's operations while the company sustained losses. *See id.*, 76 Cal. Rptr. at 688–689. The *Swaffield* court found it unnecessary to review each alleged inaccuracy in the letter. Rather, based upon the plaintiff's subsequent criminal conviction for filing false and fraudulent registration statements with the Securities and Exchange Commission, the Court held that the plaintiff was collaterally estopped from challenging the substance of the letter's charge that the had "engaged in business misconduct." *See id.*, 76 Cal. Rptr. at 164. Similarly, because Mr. John has been conclusively found to have engaged in securities violations, he is estopped from challenging the substance of *The Milwaukee Journal* article that he engaged in business misconduct while acting as chairman of the De Rance Foundation.

Under the foregoing reasoning, this Court GRANTS defendant's motion for judgment on the pleadings with respect to statement # 16. Accordingly, this Court ORDERS the Clerk of Court to issue a judgment dismissing this action. With this order, this Court also dismisses without prejudice all motions for sanctions in this case. Any party or subpoenaed third party who wishes to request sanctions must file a

brief in support of such sanctions within twenty (20) days of the signing of this order. Defendant's brief is not to exceed seven pages in length and the subpoenaed third-party's briefs should not exceed four pages. Plaintiff will be allowed an additional ten (10) days to file his responses. Defendants and the subpoenaed third-parties will then be allowed seven (7) days to file their replies.

SO ORDERED.