## AUTO TRADING CO. v. WILLIAMS.

No. 7058—Opinion Filed Oct. 24, 1916.
On Rehearing, Jan. 13, 1919.
(177 Pac. 583.)

**Corporations—Foreign Corporations—"Doing Business"—Process.**

A nonresident corporation engaged in buying up old and used automobiles, and replacing the old and defective parts with new parts, and rebuilding them and selling them as Atco motor vehicles, entered into a written contract with a resident of Oklahoma, whereby it was agreed that said party should become a dealer and canvass a prescribed territory for purchasers of said automobiles, and that orders for the same should be forwarded to the company subject to its approval, and that the automobiles should be sold and delivered f. o. b. at Pittsburgh, Pa., and should be shipped into Oklahoma direct to the purchaser. Held that this did not constitute transacting business in the state within the provisions of section 1339, Revised Laws of 1910, so as to authorize service of summons on the secretary of state.

(Syllabus by Brunson, C.)

Error from District Court, Osage County; R. H. Hudson, Judge.

Action by D. G. Williams against the Auto Trading Company. Verdict and judgment for plaintiff, and defendant brings error. Reversed and remanded.

H. P. White, for plaintiff in error.

J. M. Worten, for defendant in error.

Opinion by BRUNSON, C. For convenience the parties to this suit will be designated here as they were in the trial court.

The action was commenced by the plaintiff against the defendant to recover damages in the sum of $3,000 on account of personal injuries received because of the negligence and carelessness of the defendant to put proper emergency brakes in a certain automobile the plaintiff purchased from the defendant. It is alleged that at the time the car left the shops of the defendant one-half of the emergency brake was gone, there being no emergency brake on one wheel, and that the first time it became necessary to use the emergency brake on a steep hillside it would not hold the car.

and it ran back down the hill over an embankment and turned over and caught the plaintiff under it and broke both bones of his left leg, and otherwise mashed, bruised, and permanently injured him, and that the carelessness and negligence of the defendant in failing to so provide said car with proper brakes was the approximate cause of his injury.

It is further averred that the defendant was duy and legally incorporated under and by virtue of the laws of Pennsylvania, and it was doing business in Oklahoma; that it was engaged in the business of buying up old and used automobiles, rebuilding them with new and substantial parts in place of old worn-out or broken pieces, and reselling them all over the United States as cars in first-class condition; that on or about the 1st of August, 1913, through an agent of the defendant at Bigheart, Okla., it sold the plaintiff one of its rebuilt automobiles, and that it was to be shipped to him from the defendant's shops located at Pittsburgh, Pa., and that it was shipped and delivered to him at Avant, Okla., on or about the 16th day of September, 1913, and that he was injured on the 17th day of September, 1913, as herein set out; that the defendant could have, by the exercise of proper care and skill before the car left its shops, ascertained the imperfect and defective condition of the brake.

A summons was caused to be issued from the district court of Osage county to the sheriff of Oklahoma county, Okla., commanding him to notify the defendant that it had been sued by the plaintiff in the district court of Osage county for the sum of $3,-000, and that, unless it answered on or by the day fixed therein, judgment would be taken against it for the same. In due time the sheriff of Oklahoma county made his return on the summons showing that he had served the same on Hon. B. F. Harrison, secretary of state. The defendant made special appearance and moved the court to quash the service of summons because it had not been issued, served, and returned as provided by law, and that such service was wholly insufficient to confer jurisdiction on the court. It appears that this motion was tried to the court upon affidavits and testimony, and that after hearing the same the court overruled the motion and exceptions were duly served.

After demurrer to the amended petition was overruled and exceptions saved, an answer was filed, and thereafter a trial was had to the court and jury, and a verdict returned for the plaintiff in the sum of $1 500, and a judgment was entered. Motion for a new trial was filed in due time and overruled, exceptions saved, and the case is before us on appeal.

It is contended that the court erred in overruling the special appearance and motion to quash the summons. The evidence on this motion discloses that the defendant is a foreign corporation; and that its principal place of business was at Pittsburgh, Pa.; that on or about the 9th day of May, 191— it made and entered into a written contract with E. E. Waltman and Loris E. Bryant, doing business as Waltman & Bryant, of Bigheart, county of Osage, state of Oklahoma. This contract shows that it was made at Pittsburgh, Pa. It refers to Waltman & Bryant as dealers, and they are granted the right to sell its Atco motor vehicles in Osage county, and they are to be paid commissions as therein specified. And it is specified therein, among other things, "that the dealers shall have no right or authority to accept or receipt for moneys due to the company."

A portion of the contract is as follows: .

"Tenth. It is further agreed and understood that the dealer is not the agent of the company for any purposes or in any manner whatsoever and has no authority to bind the company whatsoever by any warranty representation or otherwise, except as stated in this contract.

"Eleventh. No orders for Atco motor vehicles shall be valid or binding until the contract for the purchase thereof shall have been approved by the company and contract signed by one of its executive officers, and all contracts must be executed on the regular contract blanks as provided by the company."

It is shown by affidavits that Waltman & Bryant made all sales of automobiles in strict conformity with the terms of the written contract, including the car in question; that the only act they performed was to send the order for the car, together with the contract, and accompanying the same a check for the first payment in pursuance to the contract to the company at Pittsburgh, Pa., for its approval or rejection; that the purchase price of the car was $595; that after the car was shipped to the purchaser he made payment of $245 in check and executed notes for the balance of the purchase price, and gave a mortgage on the car to secure the same, which payments were to be made in monthly installments of $30 each, in all amounting to $300, and that the notes and mortgage were sent direct to the company subject to its approval, and mortgage to the register of deeds for proper entry.

It is not shown that the defendant had

any moneyed capital invested in property in Oklahoma, or that it had a warehouse or place of business in this state, or that it had an officer residing here, or that it had any employes here, or that it had a designated agent in the state upon whom service of summons could be had. The testimony shows that all orders were sent to the company subject to its aproval, and that all notes and mortgages were made payable to it, and that no cars purchased from it were shipped to the dealers, but that all of them were shipped direct to the purchasers, and that the one in question was shipped direct to the purchaser.

Under these facts the question for us to decide is whether or not the defendant was doing business within the state of Oklahoma so that service of summons could be made upon it through the secretary of state.

In the case of Fuller v. Allen, 46 Okla. 417, 148 Pac. 1008, it is said:

"Under sections 1335-1339, Rev. Stat. 1910, Ann,. prescribing conditions under which foreign corporations may transact business in this state, by the phrase 'transacting business' is meant the doing or performing of a series of acts which occupies the time, attention, and labor of men for the purpose of livelihood, profit, or pleasure; but the doing of a single act pertaining to a particular business would not be considered carrying on, transacting, or doing business as contemplated in said sections."

The court in this opinion quoted with approval a number of authorities, some of which are as follows:

" 'Any law which provides that the sale of goods by a foreign corporation through soliciting agents, who take orders subject to approval at the home office, is doing business within the state, is void, because it is an interference with interstate commerce.' Davis & Rankin Mfg. Co. v. Dix (C. C.) 64 Fed. 406. * * *

" 'Statutes of the kind under consideration have no application to the case where a corporation sends into the restricting state its traveling agent, who solicits orders for its goods and forwards them, subject to approval to the home office; the orders being afterward filled by shipments to the customer. Such an application of the statute would be inadmissible in so far as state statutes are concerned, because, so applied, it would have the effect of imposing a restraint upon commerce between the states or with foreign countries.' 19 Cyc. 1272, 1273, and authorities cited in notes. * * *' "

In Wolff Dryer Co. v. Bigler, 192 Pa. 466. 43 Atl. 1092, the court said:

"Where the foreign corporation has no office or place of business within the restricting state, and no part of its capital is in- vested there, and the goods are shipped either directly from its factory or upon its orders given to other factories, the fact that its agent came into this state and made contracts for machinery to be delivered here did not bring it within the inhibition of the act of 1874."

In the case of Koch Vegetable Tea Co. v. Shumann, 42 Okla. 60, 139 Pac. 1133, the court said:

"A nonresident corporation, engaged in the manufacture and sale of certain proprietary medicines, entered into a written contract with a resident of Oklahoma, whereby it was agreed that certain of its products should be 'sold and delivered f. o. b.' at a point outside of the state, and should be shipped into Oklahoma and resold at retail. Held this did not constitute 'transacting business' in the state, within the provisions of section 1335, nor incur the penalty prescribed in section 1338, Rev. Laws 1910."

The case of Fruit Dispatch Co. v. Wood, 42 Okla. 79, 140 Pac. 1138, was one much stronger in favor of "doing business within the state" than the instant case. The Fruit Dispatch Company was a foreign corporation engaged in importing and distributing tropical fruits, and to facilitate the business maintained branch offices in various states. Each branch office had the name of the company on the door and the resident manager in charge, who solicited business in his territory and forwarded orders for fruit to the general office at New York or New Orleans for acceptance. One of its branch offices was located at Oklahoma City, in charge of C. S. Bell, who solicited orders. Collections made from customers were deposited in the Western National Bank of Oklahoma City, and in this case it was held by this court that the Fruit Dispatch Company was a foreign corporation engaged in interstate commerce, and not subject to the statute fixing the duties of foreign corporations.

In the case of Harrell v. Peters Cartridge Co., 36 Okla. 684, 129 Pac. 872, 44 L. R. A. (N. S.) 1094, the decisive question in that case was whether or not the service had on the secretary of state was valid and binding against the defendant. The question depended wholly upon the fact whether or not the defendant was "doing business" within the state within the meaning of the term, and it was held that such was not the case, and that service on the secretary of state was insufficient to confer jurisdiction on the court.

In the case of Macnaughton Co. v. McGirl, 20 Mont. 124, 49 Pac. 651, 38 L. R. A. 367, 63 Am. St. Rep. 610, it is said:

"The purchase and solicitation of wool by an agent of a foreign corporation for shipment to other states wherein the principal

business of the corporation is done is a business directly pertaining to interstate commerce, which the foreign corporation is entitled to engage in without complying with a state statute imposing conditions upon its right to do business in the state."

In J. A. French v. State of Texas, 42 Tex. Cr. R. 222, 58 S. W. 1015, 52 L. R. A. 160, the court said:

"An agent of a nonresident organ company who travels by wagon, carrying an organ with him, which he sells whenever he can do so, or, in lieu thereof, takes an order for a different organ which, when shipped to him, he delivers to the purchaser, is engaged in interstate commcere so as to be exempt from an occupation tax on peddlers under state law."

In the case of Berger v. Pennsylvania R. Co. 27 R. I. 583, 65 Atl. 261, 9 L. R. A. (N. S.) 1214, 8 Ann. Cas. 941, it is said:

"A foreign railroad company having no transportation line within a state is not doing business there, within the meaning of a statute providing for service of process on foreign corporations doing business within the state by serving its agent, by maintaining within the state an agency to solicit shippers to direct the local carrier, to whom property is delivered for transportation, to bill it over the line of such foreign corporation."

In the case of Case v. Smith L. & Co. (C. C.) 152 Fed. 730, it is held that the maintenance by a corporation of an office in another state, in charge of a sales agent who takes orders for goods and transmits them to the home office for acceptance and to be filed, is not "doing business" therein.

By reference to the contract with Waltman & Bryant it will be observed that their authority was restricted to soliciting orders and they had no authority to make contracts for the defendant, but that all contracts were to be submitted to and approved by an officer of the company at Pittsburgh, Pa.

In view of the above authorities, it is clear to our minds that the defendant was not "doing business" within the state of Oklahoma so as to authorize service of summons on the secretary of state as provided in section 1339, Revised Laws of 1910, and that the trial court acquired no jurisdiction of the person of the defendant by service of summons on the secretary of state, and the court committed prejudicial error in overruling the motion of the defendant to quash the service of summons.

In view of the conclusions we have reached, we do not deem it necessary to consider other questions presented in the record.

The case is therefore reversed and remanded to the trial court for further proceedings not inconsistent with this opinion.

By the Court: It is so ordered.

On Rehearing.

PER CURIAM. After a thorough examination and consideration of the authorities cited in the petition for rehearing and response thereto, we are of the opinion that the original opinion filed in this case by Commissioner BRUNSON is correct and is in accord with the authorities cited in the opinion.

It is therefore ordered that the order granting a rehearing in this case be set aside, the petition for rehearing heretofore filed be denied, and the opinion of the commissioner be approved.

All the Justices concur.