ROYAL FINANCE CO. OF CALIFORNIA v. MILLER.

No. 6240.

Circuit Court of Appeals, Ninth Circuit.

Feb. 16, 1931.

Lasher B. Gallagher, of San Francisco, Cal., for appellant.

Liggett & Liggett, of San Diego, Cal., for appellee.

Before RUDKIN and WILBUR, Circuit Judges, and SAWTELLE, District Judge.

WILBUR, Circuit Judge.

This is an appeal from a judgment of $5,122 damages for personal injuries suffered by May Miller, the appellee, as result of an accident which occurred while she was riding in an automobile driven by George Irving on a highway between San Diego, Cal., and a real estate subdivision known as Kentwood in the Pines, about sixty-four miles east of said city. The appellee alleged in her complaint that the accident resulted from the negligence of the driver, and that he was acting for and on behalf of the appellant at the time and place in question; that the appellant was conducting a real estate business and engaged in selling land in a subdivision in Kentwood in the Pines, and that she was being transported by the appellant in the automobile of George Irving as a prospective customer for property in said tract. The appellant denied that George Irving was acting as its agent, and alleged in a separate defense that the accident was unavoidable. At the trial appellee called George Irving, the driver of the car, as her witness, and it appeared from his testimony that he was engaged by the appellant primarily for the purpose of delivering a lecture to the prospective purchasers who had been conveyed by the appellant to the tract in question, and that after his lecture, setting forth the advantages of the tract, sales agents of the appellant would endeavor to consummate sales of land in said tract to said prospective purchasers. He was paid for this service $50 a week, and used his own automobile in getting to and from the tract. It was his custom, when the automobiles of the appellant were loaded to their capacity, to transport to the tract such customers as he was requested by the appellant to transport. On the day of the accident he was given the names of the appellee and of another lady, Mrs. Manning, appellee's friend, by the manager of the San Diego agency of the appellant, and he proceeded to the residence of Mrs. Manning, and thence to appellee's residence, for the purpose of transporting them to the subdivision

in question. This testimony was undisputed. Mrs. Manning testified that she had invited the appellee to go with her to the tract in question at such time as transportation could be arranged, and that she had not been asked to extend that invitation by the appellant. From this it is contended by the appellant that the appellee was a guest of Mrs. Manning. It reasonably appears, however, from the evidence that Mrs. Manning, after extending the invitation to the appellee, informed the appellant of that fact and that the officers of the appellant directed George Irving to transport both ladies to the scene of their real estate activities.

The driver of the car and both ladies testified to the fact of the accident and the manner of it. It appears therefrom without dispute that the machine was proceeding along a paved highway in the daytime, and that the machine was driven, or ran, off the edge of the pavement, proceeded a short distance with the left wheels on the pavement and the right wheels on the dirt shoulder of the road, until a culvert was encountered; that the right front wheel of the automobile dropped into the ditch; that the machine suddenly stopped and the appellee was thrown against the machine and her arm broken and she suffered the injuries for which she claims compensation. The appellee and Mrs. Manning both testified that the driver, having difficulty in keeping his straw hat on because of the wind, took off his hat. With one hand on the wheel and the other holding his hat, he reached back to place the hat in the back part of the coupe, and in doing so he took his eyes off the road and the machine proceeded not more than two or three times its length when the accident occurred. The driver testified that a sudden gust of wind blew his hat from his head; that he involuntarily raised his hands from the steering wheel, but quickly replaced them, and found that, although the car was drifting strongly to the right side of the road, he was unable to turn it back because of the jamming of the steering gear. The car proceeded off the road, that he ran over some of the rocks that had been placed along the highway at its edge, and finally came to the culvert where the accident happened, as heretofore described.

Aside from the appellant's contention that the driver of the car was not its agent, the principal contention throughout the case was with reference to the degree of care required of the driver by the law of California. This question is presented in the assignments of error by objections to certain instructions which will be hereinafter considered. Be-

fore discussing the subject of instructions we will dispose of a preliminary question which arose during the introduction of the evidence.

■ George Irving testified to the hereinbefore stated facts relating to his employment, and upon his direct examination by the appellee stated that he was licensed as a real estate salesman employed by the appellant. A motion was made by the appellant to strike this testimony out on the ground 'that the license itself was the best evidence. Under the law of California real estate salesmen are required to procure a license from the state authorities, and it was with reference to such a license that the witness was testifying. The court did not rule upon the motion when presented, but the appellee undertook to secure the better evidence demanded by calling the deputy state real estate commissioner for the state of California, residing in San Diego, who produced the records of his office and testified that it appeared from those records that a license had been issued to George Irving as a real estate salesman for the appellant. This evidence was also objected to as not the best evidence. The objection was overruled; the court failed to rule upon the previous objection as to the testimony of the witness himself as to the license. It appeared from the testimony of the witness Irving that the certificate, or license, issued to him had been returned by him to the office of the deputy real estate commissioner for the purpose of securing a new license for the next ensuing year, and that the license had never been returned to him. It was also shown that the old license itself was not in the custody of the deputy state real estate commissioner. The state of California provides that official records are prima facie evidence of the facts stated therein. Cal. Code Civ. Proc. §§ 1920, 1926. It would seem that the evidence was admissible, and that the objection that the entry in the books of the commissioner was not the best evidence of the contents of a certificate or license was sufficiently met by the fact that the certificate had probably been destroyed, and that therefore the entry was the best available evidence. Inasmuch as the testimony of the witness that he was acting for and on behalf of the appellant was not denied, and the further fact that the question of whether or not he was licensed as a salesman is wholly immaterial, there was no prejudicial error in the admission of the testimony.

The court instructed the jury in effect that under the undisputed evidence the wit-

ness George Irving was acting as agent for and on behalf of the appellant, but added: "If you do not believe the testimony, then of course the result would be different, but this testimony comes in without any dispute." We will consider this instruction later in connection with the exceptions.

The court instructed the jury as follows:

"The first thing that you have to decide here, not necessarily as conclusive of the case, but conclusive thereafter of the character of your consideration, is the status of Mrs. Miller in this automobile on this occasion. If she were a mere guest and accepted by the company as such, then one rule of care would apply. If she went as a prospect, another rule would apply. Now, what is the difference? A prospect goes in the interest of the real estate promoter.

"Almost every time I come to this court from Broadway I have passed a woman with a stand on the street up here a block or so, who has accosted me with a solicitation to accept a real estate invitation, offering me a free ride to a place where real estate is for sale. I am not interested in her or the real estate. Her principal through her undertakes to interest me in that real estate, not because it has any interest in me, but because it wants to get something out of me, possibly, and if I should react to that solicitation and accept this ride to go out there and look at the real estate and listen to the lecture, I would not be going as a mere guest, such as I would if one of you should say, 'How would you like to take a ride over to Point Loma, I am going over this afternoon?' And I go, as I have gone with one of the officers of the court since I have been here, for my own pleasure, in one instance I would be something akin to a passenger, because there would be something akin to a consideration to the corporation transporting me taking me out in this instance. In the other instance I would be but as a guest. Now, it seems to the court the question is entirely new to us. It may have occurred many times in California courts, but it is new to me. It seems to me that when one goes on one of these rides, whose interest is born of the urgent solicitation of the party who hopes to make some money out of that person, there goes with the solicitation something of an assurance that the party will be transported to the scene and back safely; whereas, if one goes as a voluntary guest of another, there is not that same degree of assurance of safe transportation. So we advise you to consider whether this company acting through Irving took Mrs. Miller on this occasion as a pros-

pect. She said something on that subject herself. Doubtless you remember more clearly than the court does as to what she said, but if they took her out in the regular course of business in carrying prospects to that place, and accepted her as such, and she reciprocally had in her mind the idea that she might become an investor as a result of this transportation and observation, then the company undertook to get her out there and return her safely. She relinquished none of her rights to a safe conveyance whatever, took none of the responsibility in her own hands, and under those circumstances it requires, it seems to the court, a rather higher degree of care in transportation than it would if she were going with a friend in some pleasure ride, as a guest of the friend. Undoubtedly it must be the law, we think, under circumstances as peculiar as this, that one who rides in the interest of another and as a result of the solicitation of the transporter, is something more than a mere guest. In either case, however, whether she went as a guest or as a prospect, she was entitled to have exercised for her, on the part of the driver of the car, reasonable care for her protection, that degree of care and protection and vigilance toward her safe conveyance which the circumstances require. What is reasonable care depends upon the circumstances. Something of a higher degree of care is reasonable toward the passenger than a guest. The expression reasonable diligence, reasonable care, reasonable protection or vigilance, is an elastic expression, the elasticity depending upon the peculiar circumstances of the transaction under observation, and it is for you at the crux of this case to determine whether under the circumstances reasonable care was exercised toward her safe transportation by the man Irving. * * *"

Before considering this instruction in detail it should be stated that the degree of care exacted of a carrier for hire and of a gratuitous carrier are stated in the Civil Code of California, § 2100, as follows: "A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill."

Section 2096 provides: "A carrier of persons without reward must use ordinary care and diligence for their safe carriage."

The Supreme Court of California, in the case of Champagne v. Hamburger & Sons, 169 Cal. 683, 147 P. 954, held that, where the owner of a department store operated the elevator in that store for the convenience of

customers, it was a carrier for reward, regardless of whether or not the particular customer carried purchased or did not purchase articles therein. By analogy it would seem clear that where a real estate firm was engaged in a selling campaign, and as a part of the sales scheme was engaged in transporting customers or prospects to and from the real estate it was endeavoring to sell, it was a carrier for reward within the meaning of the sections of the California Code as interpreted by the Supreme Court of California. This rule is asserted by the appellee and is not disputed by the appellant. The controversy in that regard, so far as appears from the record, is over the question as to whether or not the appellee was a prospective customer and was transported by the appellant as such, or whether she was transported merely as a friend of Mrs. Manning, a prospective customer. As appears from the above quoted instruction, the trial judge was somewhat in doubt as to the degree of care required by the appellant under the conflicting theories presented for consideration of the jury. Neither party submitted any instructions, and the only exception to the instructions reserved by the appellant was in the following language: "If the Court please, might I note an exception to that portion of the instruction which refers first to the question of agency and independent contractor, and second, to the portion of the instruction which relates to the degrees of care and the question of guest liability and non-guest liability. Other than that I think there is nothing."

It will be observed that the court instructed the jury that one of the principal questions they were to consider was whether or not appellee was a guest of the company or whether she was a prospect, and that the rule of care was different in one case from that in the other; that in either case, whether she went as a guest or a prospect, she was entitled to have reasonable care exercised by the driver for her protection, which the court defines as that degree of care and protection and vigilance toward her safe conveyance as the circumstances reasonably required; that what is reasonable care depends upon the circumstances, and that a higher degree of care is reasonable toward the passenger than toward a guest, and that the jury were to determine whether or not reasonable care was exercised toward her safe transportation. While the court erred in asserting that reasonable care was to be determined by a consideration of whether or not the passenger had paid for her carriage or came within the category of a passenger for hire, the court furnished the jury no criterion for determining the degree of care required of the appellant other than such care as the jury found to be reasonable. This instruction, taken by itself, is less favorable to the appellee than she was entitled to if the jury found, as the undisputed facts indicate, that she was a passenger for hire, for it is undoubtedly true that a higher degree of care was required in such case than the case of a guest, and that that higher degree of care was greater than the care denominated as reasonable or ordinary care. In this view of the instruction it is clear that the appellant was not injured.

Earlier in the instruction, the court, in different language, expressed the opinion that the appellant owed to a prospective customer a different "degree of assurance of safe transportation," but followed this portion of the instruction with a definite instruction that, if the appellee was a prospective customer, " * * * then the company undertook to get her out there and return her safely." Under this instruction the jury were undoubtedly directed that under the circumstances disclosed by the evidence the appellant was an insurer, but it is fairly manifest from the entire instruction that the court did not so intend, for in the very next sentence, proceeding upon the assumption that she was a prospective customer, the court said: " * * * Under those circumstances it requires, it seems to the court, a rather higher degree of care in transportation than it would if she were going with a friend in some pleasure ride, as a guest of the friend." Taking the instruction as an entirety it is doubtful if the court intended to instruct the jury that the law required any higher degree of care of the appellant in transporting a prospect than a reasonable degree of care of a rather higher degree than if she was being transported as a guest. The exception to this instruction does not state the ground of the exception as is required of a party in order to present such objections in this court. In Sacramento, etc., v. Loucks, 36 F.(2d) 921, in speaking of the specification of error as to instructions given by the trial court, we said: "These specifications of error cannot be considered, for the reason that the exceptions to the charge do not show the ground of the objection thereto." See, also, Sacramento, etc., v. Johnson (C. C. A.) 36 F.(2d) 925.

Exceptions to this general rule have sometimes been made where, by reason of requested instructions or otherwise, it is clear that the court was reasonably advised as to

grounds of the exception. Here there is nothing in the record to inform the court of the degree of care, which in the opinion of the appellant was due to a prospective customer, or, on the other hand, was due to an invited guest.

The exceptions taken to the instruction do not point out the fact that the court has stated, apparently by inadvertence, two inconsistent rules for measuring the responsibility of the appellant in the event that the jury found that the appellant was a carrier for hire.

It is clear that this is a proper case for invoking the rule which requires the appellant to state the grounds of his objection, the purpose of the rule being to inform the court of the exact nature of the contention of the appellant in order that the court may intelligently pass upon such an objection and modify or withdraw instructions which have been erroneously given. Where the judge, in his instructions, states that the laws of California relating to the subject are new to him, although those rules may be well settled, the duty of counsel to explicitly present the grounds of his objection is apparent. For the reason of the insufficiency of the exception we will not give further consideration to the instructions.

Judgment affirmed.