## LIQUID VENEER CORPORATION v. SMUCKLER.*

No. 8138.

Circuit Court of Appeals, Ninth Circuit.

May 10, 1937.

*Rehearing denied July 12, 1937.

WILBUR, Circuit Judge, dissenting.

MATHEWS, Circuit Judge, dissenting in part.

Paul V. Sheehan, of Buffalo, N. Y., and Bicksler, Parke & Catlin, of Los Angeles, Cal., for appellant.

Harry Graham Balter, of Los Angeles, Cal., for appellee.

Before WILBUR and MATHEWS, Circuit Judges, and NETERER, District Judge.

NETERER, District Judge.

The appellee, on December 17, 1931, filed a complaint for libel in the Superior Court of the State of California, Los Angeles County, against the appellant; a New York corporation, in which she alleges that she manufactured and sold a furniture and automobile polish preparation under the name of "French Veneer" and had established a profitable business. That the appellant manufactured and sold furniture polish under the name of "Liquid Veneer." "That for a long time prior to this date, the defendant [appellant] has continuously and systematically and for the purpose of injuring the reputation and the business conducted by this plaintiff [appellee], caused letters to be mailed to various customers of this plaintiff for the purpose of destroying the business relations that existed between plaintiff and her customers, and that said letters were written for the purpose of wilfully and maliciously injuring the good name of the plaintiff and for the further purpose of destroying the business that plaintiff has established in the State of California and elsewhere, and that within one year last past the defendant, in furtherance of its plan and scheme to injure and destroy the plaintiff's good name and reputation did wilfully and maliciously compose, publish and cause to be published a letter addressed to Young's Market Company at Los Angeles, California, which letter reads as follows:

" 'Liquid Veneer Corporation

" 'London, England—Bridgburg, Canada.

" 'Manufacturers of

" 'Household Automotive Specialties

" 'Buffalo, N. Y., U. S. A.

" 'June 2, 1931.

" 'Young's Market,

" '7th Street,

" 'Los Angeles, California.

" 'Atten. General Manager

" 'Gentlemen:

" 'Our inspector reports your selling and offering for sale a product called "French Veneer," this is to inform you that our attorneys have advised us this is a flagrant violation of our trademark "Liquid Veneer" as well as our common law rights.

" 'We recently found this product on sale at the May Company. We have explained our position to the May Company and they have taken the product off sale and have promised that they will no longer sell it. You perhaps know, or you can ascertain from any patent attorney, that the sale of an infringing product by a dealer or jobber, is looked upon in the United States District Court as contributory infringing, and such dealer or jobber is equally liable with the manufacturer of the product.

" 'We have had more or less difficulty with these people who manufacture this so-called "French Veneer," have tried to purchase evidence against them individually, but they moved around from one place to another, denied their identity when we did catch up with them and after investigating them found their financial condition such as would not warrant litigation.

" 'It is a different matter, however, where we find a responsible house like yourselves, handling an infringing product, because at the end of a law suit we will be able to collect damages as well as secure a permanent injunction restraining you from ever again selling or offering for sale said infringing goods.

" 'When a manufacturer induces you to sell his infringing product, he is selling you a lawsuit. We are not in business to sue people, we much prefer doing them a favor, but you will see that we are only endeavoring to protect our property, just as you or anyone would do if in our position. We therefore request that you immediately discontinue the sale of this infringing product and advise us to that effect promptly.

" 'The manufacturer of this product if desirous of building a business rightfully his own, could easily choose many names without taking part of a name belonging to someone else, who has spent a fortune in building up their business under that name.

" 'His object for adopting the name "French Veneer" is obvious. He is trying to trade on our rights. We have evidence now of the innocent housewife purchasing "French Veneer" which she had been using for years. This housewife on finding that she had purchased the wrong Veneer returned it to the May company and received the proper genuine "Liquid Veneer."

" 'We will await your prompt reply, and remain, meanwhile,

" ' Yours very truly,

" 'Liquid Veneer Corporation

" 'Martin J. Cabana,

" 'Vice President.' "

That the letter was false, malicious, and defamatory, and the defendant intended to and did convey the meaning that the plaintiff had infringed upon a right that the defendant was exclusively possessed of, and that the plaintiff was wrongfully and unlawfully selling a product to said Young's Market and other numerous customers of plaintiff, and that the plaintiff was irresponsible, both financially and otherwise, and that she was not a fit person to do business with, and that by reason of said false and malicious letters aforementioned, said Young's Market, and other numerous customers of the plaintiff, refused to carry on or do any business with the plaintiff and by reason thereof plaintiff and her business have been damaged. Service was had upon the defendant by service, as provided by law for service upon foreign corporations, upon the Secretary of State of California. The cause was removed to the United States District Court on diversity of citizenship. The defendant thereafter appeared specially and moved to quash the service on the ground that it was not shown that the provisions of section 406a of the Civil Code of California for service upon foreign corporations had been complied with. This matter of service and jurisdiction of the court was raised several times during the course of the procedure in this case. The court, after hearing, denied the motion.

The errors are comprehended, within the charge of: (a) Noncompliance with requirements of section 406a of the Civil Code of California for service upon for-

eign corporations; (b) that the complaint does not state a cause of action; (c) prejudicial remarks of the trial judge; (d) error in charging the jury; (e) admitting evidence of the witness Waddingham and other witnesses; (f) the verdict of the jury is "wholly erroneous * * *." "Not supported by the evidence."

The law supra is not challenged, but only *noncompliance or nonapplicability* thereof for the reason that appellant did not do business in the state. Section 406a California Civil Code provides that a foreign corporation doing business in the state must by a writing filed with the Secretary of State name some person as its agent upon whom process may be served, and on failure, summons in civil actions may be served upon the Secretary of State, and the Secretary of State, when served with duplicate copies of summons and complaint and payment to him of a fee named, shall immediately notify such corporation by telegraph, charges prepaid, of the service and forward at once the duplicate copies of summons and complaint by registered mail, postage prepaid; and further provides that "the certificate of the Secretary of State, under his official seal, of such service shall be competent and sufficient proof thereof." The Secretary of State in this case certified that he made such service and further certified, "That the records of this office do not contain the name of said defendant corporation, or show the location of his offices."

It appears by the appellant's motion to quash and affidavits in support, that the defendant never did qualify to do business in the state. It has designated no person in writing filed with the Secretary of State upon whom process may be served at before or after March 1, 1932, the date of service of process on the Secretary of State. The service was legal and the court's jurisdiction was established if the appellant was doing business in the State of California. Compare Certain-teed Products Corp. v. Wallinger (C.C.A.4) 89 F. (2d) 427, decided April 6, 1937."

There can be no doubt that the defendant, at the time and prior to service upon it by serving the Secretary of State, shipped merchandise in bulk and warehoused it in San Francisco for present and future use in filling its orders; that from the San Francisco stock shipments were made to Los Angeles to fill given orders and that orders were immediately filled from the stock kept in California. Invoices in evidence show that merchandise was shipped from the warehouse in San Francisco via Pacific Steamship Company; orders were filled from a fixed stock of merchandise in San Francisco. The defendant thereafter answered, denying many allegations of the complaint for lack of information or knowledge or belief, and denying specifically that the plaintiff (appellee) was engaged in the business or preparation or manufacture or sale, etc. of "French Veneer." "Admits and alleges that for approximately two (2) years next preceding the month of June, 1931, * * * plaintiff sold and caused to be sold a liquid polishing material designated and called 'French Veneer.'" Denies that she possessed a large or profitable business and that her business was of a nature that rendered her a substantial profit. Denies that the appellant defendant has continuously or systematically, or at all, caused letters to be mailed to various customers of plaintiff for the purpose of injuring plaintiff's business or the relations of plaintiff with her customers, and denies that any letters mailed by it to persons who were customers of plaintiff were mailed for the purpose of wilfully or wrongfully injuring the good name of plaintiff or destroying her business. Denies that in furtherance of any plan or scheme to injure the plaintiff's good name or reputation it caused to be written and mailed the letter above quoted herein. Admits that "it wrote and mailed a letter concerning the infringement of its trademark, 'Liquid Veneer,' addressed to Young's Market, but denies specifically that in writing said letter, or any letter, it was prompted by any malice towards plaintiff, or desire or intent to injure her." Admits "that the letter mailed by it to Young's Market conveyed the meaning that the use of the name French Veneer as applied to a liquid polishing material was an infringement of defendant's trade-mark, 'Liquid Veneer,'" and denies all of the allegations with relation to malice or intent of malice or destruction of the plaintiff's business or reputation. Denies that plaintiff has been damaged in any sum because or on account of the publication complained of. And defendant files two separate and affirmative defenses, alleging in substance that for a period of about thirty years preceding the month of June, 1931, defendant has held and continued to use a trade-mark and

trade-name duly and regularly issued by and registered in the Patent Office of the United States pursuant to the laws thereof, "its said trade-mark and trade-name being and consisting of the words, 'Liquid Veneer,' under which defendant had during all of said time manufactured, sold and distributed a liquid polishing material * * * throughout the United States and other countries under said trade-mark and trade-name, 'Liquid Veneer.'" That said trade-name, "Liquid Veneer," was and is "a very valuable asset of defendant, and the word, 'veneer' was and is a material and im- portant designating part of said name." That for several years prior to June, 1931, "French Veneer" had been intermittently and from time to time sold to various retail merchants in California, and labeled as "French Veneer." That the use of said name was an infringement of defendant's registered trade-mark and trade-name, "Liquid Veneer." That the use of the name "French Veneer" had a tendency to, and did, lead the purchasing public to believe that the product so labeled and offered under said name was "Liquid Veneer." That defendant, upon ascertaining the facts, complained to plaintiff of her infringement of its trade-mark and trade-name; that she denied and disclaimed responsibility for the origin and marketing of said product, "French Veneer." That the defendant had no recourse against her at law and in the "light and knowledge of the facts aforesaid, and without malice or purpose to injure plaintiff, but with the good faith and purpose of protecting itself from loss and injury by infringement of its trade-mark and trade-name, and for the purpose of avoiding the necessity for taking legal proceedings against innocent parties, it did write and mail the letter aforesaid, fully believing that it was, and each and all of the statements therein contained were, in every respect true."

And for a further, separate, and second affirmative defense the appellant alleges, "that the matters and things stated in the letter written and mailed by it to Young's Market * * * were and are true." Thereafter the plaintiff [appellee] filed an amended complaint in which she alleged that the defendant [appellant] "has been and now is doing business in the State of California." After trial a verdict for the plaintiff was duly entered.

By motion for a new trial and by motion to dismiss, made after verdict and judgment, the jurisdictional question was again raised and, in opposition to the motion to dismiss, appellee filed the affidavits of four witnesses, two of whom (John Brash and J. W. Howell) had previously made affidavits in support of appellant's motion to quash service of summons. One was the superintendent and the other the secretary of the warehouse company where the appellant warehoused its stock. In substance these parties, on oath, say that the appellant during "all of said time" until May 4, 1932, maintained an account with the warehouse company (Lawrence Warehouse Company, now Haslett Warehouse Company) and maintained therewith a stock of merchandise; that on May 4, 1932, the account and merchandise was transferred to G. A. Hosmer Co., where it remained until April 18, 1935, when "G. A. Hosmer Co. instructed said Haslett Warehouse Co. to ship all of its Liquid Veneer products merchandise out of the state." That the stock was stored with the warehouse company until orders were received from appellant or Hosmer Company, who would request the warehouse company to deliver various amounts from said stock to local customers who were on the accredited list, and the warehouse company would advise appellant or Hosmer Company on delivery. A certain amount of merchandise was always kept on hand. It is said merchandise was shipped in "carload quantities * * * which was stored until sold, which took from one month to two years." The testimony of these affiants was given pursuant to subpoenas, and subpoena duces tecum. Upon hearing appellant asked permission to withdraw its motion to dismiss and to have the opposing affidavits stricken. The court granted permission to withdraw the motion, but denied the motion to strike the affidavits. Appellant excepted to the rulings of the court in receiving this testimony and likewise in declining to strike the affidavits.

■■ This was not error. No new issue was presented to the court on the merits of the case. The court had a right, and it was its duty, to hear any testimony or fact raised on the motion to dismiss which would unfold the truth as to the business relations of the appellant in the State of California and this testimony simply eluci-

dated the status as it existed on the day of service.

If error was committed in denying defendant's motion to dismiss made at the commencement of the trial, or the denial of its objection to the introduction of any evidence, this was cured by the amendment to the complaint during the course of the trial, nor was there error in permitting the amendment. No substantial right was prejudiced.

It is clearly shown by the record that appellant was doing business in the state at the time of service. That fact existed and the court had jurisdiction, whether or not the fact was duly shown upon the hearing on the motion to quash. The necessary jurisdictional fact is doing business. The service was properly made, all jurisdictional facts were present. "It is the service, and not the proof thereof, that gives the court jurisdiction." Von Arx v. Boone (C.C.A.9) 193 F. 612, 615. This is also the view of the California courts. Howard v. McChesney, 103 Cal. 536, 537, 37 P. 523; Gavitt v. Doub, 23 Cal. 78, 81. At bar some suggestion was made that no return on the summons was made by the sheriff. This is not required by section 406a, supra. The intent of the Congress on like issues appears in section 954 Rev.St. (28 U.S.C.A. § 777): "No summons, writ, declaration, return, process, judgment, or other proceedings in civil causes, in any court of the United States, shall be abated, arrested, quashed, or reversed for any defect or want of form." And the further provision that the appellate court (40 Stat. 1181, 28 U.S.C.A. § 391), "On the hearing of any appeal, certiorari, writ of error * * * shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

The business transacted in the state by a foreign corporation to permit service must be such as to warrant the inference that the corporation is present and its activity must be more or less continuous. A foreign corporation may be doing business in a state to bring it within the jurisdiction of the court and amenable to its process and yet not obtain a status to be regulated by a state statute or bring it within the statutory provision requiring a license for operation of such foreign corporation. Vicksburg, S. & P. Ry. v. De Bow, 148 Ga. 738, 98 S.E. 381, 384. Doing business having relation to interstate commerce is distinguished from doing business making the foreign corporation amenable to service of process. See Webster v. Doane, 137 Misc. 513, 241 N.Y.S. 242; Auto Trading Co. v. Williams, 71 Okl. 302, 177 P. 583; Knapp v. Bullock Tractor Co. (D.C.) 242 F. 543.

The objection that there was no allegation that the malicious letter was "of or concerning the plaintiff" or that the communication was published or that there was actual malice or malice in fact in reference to the alleged communication is without merit. What has been said disposes of the claimed error on ruling upon the objection to the admission of any evidence at the opening of the trial and dismissal on the opening statement of the case; and on the several hearings challenging the jurisdiction of the court. It should be noted, however, that the practice of objecting to the introduction of any evidence on the ground that the complaint does not state a cause of action, or dismissal on the opening statement for the same reason is not recognized in the federal courts, even though permitted in the state courts. Boone v. U. S. (C.C.A.) 257 F. 963, 965; United Kansas Portland Cement Co. v. Harvey (C.C.A.) 216 F. 316; Board of Com'rs of Hamilton County v. Sherwood (C.C.A.) 64 F. 103; and cases cited in each. Nor was it error to receive the letters appellee offered referring to the same subject matter and of a character from which a malicious purpose may be inferred. It is at once obvious that the issue tendered by the complaint asserts a plan and scheme on appellant's part to destroy "the business relations that exist between the plaintiff (appellee) and her customers and that said letters were written for the purpose of maliciously injuring the good name of the plaintiff (appellee) and for the purpose of destroying the business that plaintiff has established * * *"; which plan and scheme culminated in the letter set out in the complaint as the basis of the suit. It was not sought to simplify or clarify the issue. The issue was made by the answer and the affirmative defenses upon the issue as tendered by the complaint. No motion was made to strike any part of the allegations in the complaint, or to separately state causes of action or eliminate matter barred by the statute of limitation or plead the statute of limitations as a bar.

The basis of the action is the letter to the Young's Market set out in the complaint. This, from the allegations in the complaint, is the culmination of the plan asserted by the complaint to destroy the business and reputation of the plaintiff (appellee). The court upon trial admitted at first a letter for special consideration to show malice. Later when further testimony was offered and objections made thereto, as follows: "I wish to object to that testimony and have it stricken out on the ground that this is all prior to the date of the writing of the letter in the complaint, which is dated June 1, 1931, or June 2, 1931."

In reply to the court's inquiry as to the purpose, appellee's counsel stated: "Showing the measure of damages."

And further: "As far as the May Company was concerned, their letter of April the 2nd, 1929, established the fact that 'We are always glad to cooperate and from this day on we will discontinue the sale of French Veneer.'"

After further colloquy counsel for the appellant stated: "———— 2nd, 1931. Obviously, anything that transpired previously to that has no bearing on the letter because the letter was not in existence."

The court, after reading the allegation of the complaint: "And the allegation is of general damage to the business of plaintiff. Why, then, is not this evidence admissible?"

The appellant's counsel: "Because, * * * this is three years prior to the time of the writing the letter."

The court: "But the allegation in the complaint is that as a result of these various letters not confirming [sic] them to any one."

Attorney for appellant: "But we are not apprised of anything else we are charged to libel except this thing that they put in here."

The court: "I think the allegation of the complaint that I have just read is clear and distinct to the effect that letters were written, is it not? Certainly it is, because I just read the allegations. Now, in the absence of a motion for particulars or something of that sort, I think the letters are admissible. They are already admitted, at any rate, and it is a matter for the jury to pass upon, to say whether the plaintiff suffered any damage, of course, and whether, if she did suffer dam-

age, that was attributable or reasonably the result of the letters."

After further colloquy the court said: "In the absence of a specific objection heretofore made as to what was included, or an analysis of this complaint, I would feel compelled to say that the basis of damage may reasonably be held to include all of the previous letters. Undoubtedly, I think that was the intention."

Attorney for the appellee (plaintiff): "That was the intention."

The court overruled the objection.

It is obvious that upon the issue as framed, there was just one cause of action. That action was for damages for destruction of business and injury to reputation. This testimony tended to show appellee had a business, and her commodity had merit and public favor. Issue having been taken upon the issue tendered, this court may not, on this review, clarify or simplify the issue.

Section 430 of the Civil Code of Procedure of California, "When defendant may demur" to the complaint within a specified time, subdivision 5 says: "That several causes of action have been improperly united, or not separately stated." We have no error before us for review upon such issue. Section 434, Code, supra, provides: "If no objection be taken, either by demurrer or answer, the defendant must be deemed to have waived the same, excepting only the objection to the jurisdiction of the court, and the objection that the complaint does not state facts sufficient to constitute a cause of action."

 The court's jurisdiction and the sufficiency of the complaint were raised at every stage of the proceeding, but the improper joinder of actions or the separate statement of actions has not been challenged, nor a ruling requested by the trial court and error predicated on the ruling of the court. The bar of the statute of limitations to any matter pleaded in the complaint was not asserted as a defense. The bar of the statute of limitations must be pleaded, and not being pleaded is waived. Section 434, supra. It should also be stated that the issue tendered by the complaint and the letters offered pursuant to the allegations of the complaint were competent to show intent of the parties and likewise of a status created which existed and carried forward on the date and subsequent to the letter, the basis of this ac-

204

tion. The removal from its stock by the May Company of the plaintiff's "French Veneer" shows merit in the article on the date of and prior to the letter in issue and gave meritorious status to it on that date. Sheldon v. Carpenter, 4 N.Y. 579, 55 Am.Dec. 301. There is one accomplished wrong. The letter, the basis of the action, accomplished the destruction of plaintiff's business, as Young's Market was the last to surrender. Woods v. Pangburn, 75 N.Y. 495. The letter was admissible. Hearne v. De Young, 119 Cal. 670, 52 P. 150, 499. All legitimate evidence is admissible bearing on the general course of conduct of the appellant toward the appellee to prove malice inferentially. Davis v. Hearst, 160 Cal. 143, 116 P. 530. It may not be said that the letter directly in issue was privileged. [Ætna Life Ins. Co. v. Mutual Benefit Health & Accident Ass'n (C.C.A.8) 82 F.(2d) 115, 118], Laws of California and U. S. Statutes, infra, or that it is without malice and the nature thereof innocent. It speaks not as a business courtesy or warning of infringement of legal right, to one who stands in a business relation to the writer. It impugns the business integrity of the appellee, and charges her with dishonesty in trade practices; attacks her financial responsibility because of which it threatens to enjoin one of Smuckler's customers and "a responsible one and up to the present time your esteemed house is the only house handling their so-called French Veneer." The issue of malice was a matter for the jury's determination. Clark v. McClurg, 215 Cal. 279, 284, 9 P.(2d) 505, 81 A.L.R. 908; Wise v. Brotherhood of Locomotive Firemen and Enginemen (C.C.A.) 252 F. 961, 963. It may also be said that section 2 of the Act 8623 General Laws of California, as amended 1931 (St.1931, p. 2466), declares infringement of a trade-mark a misdemeanor providing imprisonment not less than ten days nor more than six months. Infringement of trade-mark is penalized by treble damages. 15 U.S.C.A. § 96 and § 123.

The record does not show that appellant had a trade-mark, statutory or common law.

■ There was no error in admitting the other letters sent by appellant to the Young's Market Company and the May Company along the same tenor. Scott v. Times-Mirror Company, 181 Cal. 345, 184

P. 672, 12 A.L.R. 1007. Proof of repetitions of libelous acts, and especially when charged in the complaint, are admissible. Hearne v. De Young, supra; Westerfield v. Scripps, 119 Cal. 607, 51 P. 958; Tingley v. Times Mirror Co., 151 Cal. 1, 89 P. 1097.

■ It was not error to admit the testimony of the vice president of the May Company, that French Veneer was taken off sale in 1928 because o. letters received b; it from appellant. (It was admissible on the broad ground that the letters were actionable and separate statement, and statute of limitations was waived, section 434 supra, and no specific damage was sought, and damage was limited to the one letter the basis of this action by the instructions.) That his company had contemplated placing French Veneer in other of its stores. This answer simply showed merit and public demand for the French Veneer. It was not error to permit this witness to answer a hypothetical question as to the reasonable probability of extending the sale of appellee's commodity if offered to the trade in a free market for the same reason. No objection was made to the sufficiency of the question, only its competency and materiality, and that it is not a matter upon which expert testimony may be given. The witness was clearly qualified. Wigmore on Evidence, §§ 555, 561 and 1723. He had been merchandising many years, had sold the merchandise, knew its merit, also the degree of public favor it received. He had special skill and knowledge in regard to the special inquiry, Conley v. Portland Gas Light Co., 99 Me. 57, 58 A. 61, and was fully able to apply all of the elements in the hypothetical question to the degree of public favor the commodity likely had, and his answer, "That plaintiff could have increased her business very materially because her product was genuine and she had created a demand for it and had a following after it was sold." What is here said applies to the testimony of all employees in the May Company store who testified, and to the appellee's testimony as to volume of business. No attempt was made to show specific loss of profit for removal of the "French Veneer" from May & Co. store, but did show merit and favor in the commodity.

■ There was no prejudicial error in any statement appearing in the record made by the trial judge "charging counsel for the defendant with dilatory and unethical ta c-

*tics and in chastising him in the presence of the jury."* (Italics supplied.) There is no statement of any remark in the record referred to which lends color to the charge. Appellant's brief, in support of this claimed error, says: "The trial court, during the trial interjected several remarks in the presence of the jury which could have no other effect than to prejudice it against defendant and its counsel. By constant overruling of defendant's numerous objections to offered testimony, and which were made in good faith, and great merit, the constant sustaining of plaintiff's position on all matters, and actually suggesting amendments and objections for plaintiff's benefit * * *," etc. We have examined the noted pages especially, and have read all the record. No ruling of the trial judge impresses us with any thought of charging unethical conduct or with any idea other than good faith on the part of the judge in discharge of his sworn duty. Of course where "many objections" are made, many rulings must follow, and if objections are not well founded, they must be overruled. Many objections require many rulings. There is no prejudicial error apparent to us. Walton v. Wild Goose Mining & Trading Co. (C.C.A.) 123 F. 209, 219. There was no request to instruct the jury to disregard such statements, or any or all statements made by the trial judge in ruling on any matter of law during the course of the trial. None of the claims above stated are in the record, nor were they called to the trial judge's attention and ruling requested.

■ The testimony of Winifred M. Jacobs is clearly competent. Inquiry of her was not as an expert, but merely as patron to the fact of the merit of French Veneer, and sales resistance of another product. The error, if any, in admitting the evidence of the plaintiff "that her business fell off to almost nothing after 1928 when the first letter was sent to the May Company," was cured by the court's instructions to the jury limiting damage to the letter in issue.

There was no error in admitting the Waddington testimony. He had been merchandising for forty years, was familiar with French Veneer, had sold it, and all he was asked, concisely stated, was whether it had merit and found public favor. The witness said: "At the time we received this threatening letter our sales on French Veneer were far outselling any other polish we had in the house * * *." There

was much colloquy but little evidence. Even though the question might have been differently framed, the answer was as to fact and not a conclusion.

■ The question of belief or an influence upon the common mind the letter would produce, was submitted to the jury as a question of fact, under proper instruction to which no exception was taken. Whether in the minds of people of ordinary sense it would bring appellee into contempt, hatred or ridicule or injure her character was a matter for the jury. Ætna Life Ins. Co. v. Mutual Benefit Health & Accident Ass'n, supra.

■ The damages awarded is a matter for the jury which is given wide discretion. Scott v. Times-Mirror Co., supra; Finnish Temperance Soc. Sovittaga v. Finnish Socialistic Publishing Co., 238 Mass. 345, 130 N.E. 845–847. There is substantial evidence as to actual damages, by business losses following the letter and closing Young's Market for the French Veneer, evidenced by the public favor enjoyed by French Veneer in the open market. The appellee testified that for some years until 1929 her sales netted $600 per month; that in 1929 the income was between $300 and $400 per month. This evidence merely shows that she had a business. There is no evidence showing specific losses, nor is such loss claimed. And it may be said that each letter constituted a cause of action. Separate statement of causes, and bar by statute of limitation, were waived. Section 434 supra. It does show basis for loss following the letter to Young's Market and closing the said market. And recovery was limited to that letter by the court. The jury allowed for loss of business $11,000, and this court, under the Seventh Amendment to the Constitution, may not deprive appellee of the benefit of the verdict; the amount is in no sense unconscionable; and as the matter of exemplary damages was left entirely to the discretion of the jury, the court cannot invade the province of the jury and say that this amount, $9,000, was excessive. A verdict for plaintiff should not be set aside if it can be sustained from any viewpoint of approach. Myers v. Pittsburgh Coal Co., 233 U.S. 184, 34 S.Ct. 559, 58 L.Ed. 906.

■ The court did not abuse its discretion in denying the motion for new trial. Such motion in the circumstances in this case is not reviewable on appeal. Gold-

stein v. U. S. (C.C.A.9) 73 F.(2d) 804, 806; Lonergan v. U. S. (C.C.A.9) 88 F.(2d) 591, decided March 5, 1937.

This case was tried by the trial judge upon the theory of one wrong as charged in the complaint until submission to the jury when recovery was limited by the instructions to damages to the final letter in the consummation of the wrong. This was in appellant's favor and it did not, nor did appellee, except thereto. The instruction given substantially covered defendant's requested instruction. No request was made to the court for more specific instructions to the jury with relation to limiting the damages to the final letter or the limited consideration the jury should give to the letters which had been admitted, or upon any other phase of the case.

■ The errors charged to the instructions given to the jury are not tenable, in that the exceptions do not state any ground of exception thereto [Royal Finance Co., etc., v. Miller (C.C.A.) 47 F.(2d) 24, 27; Dayton Rubber Mfg. Co. v. Sabra (C.C.A.) 63 F.(2d) 865; Heuss v. U. S. (C.C.A.) 88 F.(2d) 307, just decided], except as later stated.

After the court's instruction to the jury, defendant's attorney, addressing the court, said: "I believe your honor misspoke when you first addressed the jury and you said 'unprivileged' when your honor really meant 'privileged.' "

The court said: "I read the statute."

Attorney: "You did, but you misspoke yourself, your Honor, as I recollect it."

Counsel then stated: "I wish to except to your Honor's failure to give each instruction submitted by defendant; and also except to all plaintiff's proposed instructions in so far as those were given."

■ The exception to the instruction as given is clearly insufficient. Heuss v. U. S. (C.C.A.9) 88 F.(2d) 307, decided February 23, 1937.

■ The appellant's requested instruction on the subject of privileged communications was "allowed," and also the request that "malice cannot be inferred." And no further exception was taken to these items. The exception "that the court submits to the jury, as a matter of law, what seems to be question of infringement," is clearly insufficient. The supposed error or defect in the charge was not pointed out. No ground for the exception is stated if intended as an exception.

■ Assignments of error in the record not discussed and disposed of herein were not urged in this court and are, therefore, deemed abandoned.

Affirmed.

MATHEWS, Circuit Judge (concurring in part, dissenting in part).

I concur in the result and, except as indicated below, agree with what is said in Judge NETERER'S opinion.

I agree with Judge NETERER that the basis of this action was the letter which appellee wrote to Young's Market on June 2, 1931. I agree, also, that the other letters introduced by appellee were admissible in evidence, but I think they were admissible only for the purpose of showing malice. Testimony concerning any loss or damage which they caused was, I think, inadmissible. The admission of such testimony cannot, in my opinion, be justified upon the ground suggested by Judge NETERER, namely, that all the letters were in furtherance of a plan and scheme which "culminated" in the letter of June 2, 1931. The only damages claimed or alleged to have been suffered by appellee were those which resulted from that one letter. Nothing was claimed on account of previous letters, or on account of any plan or scheme. I therefore dissent from Judge NETERER'S holding that it was proper to admit the testimony of the vice president of the May Company and other witnesses to the effect that appellee's product "was taken off sale in 1928 because of letters received by [the May Company] from appellant," and that the May Company "had contemplated placing [appellee's product] in other of its stores," but did not, as it was "not wanting to buy litigation." I think that the admission of this and other similar testimony was error, but that the error was cured by the following instruction to the jury:

"Now, with reference to the various letters that were offered in evidence other than . . . the letter [of June 2, 1931] that is pleaded and upon which the damage is based. You cannot base your damages or verdict for damages, in the event you should find damages, on any of those letters. . . . They are offered and were offered for the purpose of showing malice. If they show or tend to show a continual desire or intention on the part of the de-

fendant to injure the plaintiff, then you may consider them. That is their purpose, and not for the purpose of showing damage, as is the letter [of June 2, 1931] which has been pleaded in the complaint. . . ."

By this instruction recovery was limited to damages resulting from, or based upon, the letter of June 2, 1931. If a better or more specific instruction was desired, it should have been requested. There was no such request.

The judgment should be affirmed.

WILBUR, Circuit Judge (dissenting).

The complaint in this action sets forth a letter of June 2, 1931, as constituting a libel. The complaint, however, in addition, alleged that for a long time prior to the date of this letter the defendant "caused letters to be mailed to various customers of this plaintiff for the purpose of destroying the business relations that existed between plaintiff and her customers, and that said letters were written for the purpose of wilfully and maliciously injuring the good name of the plaintiff," etc. It alleged, "that by reason of said false and malicious letters aforementioned, said Young's Market and other numerous customers of the plaintiff, refused to carry on or do any business with the plaintiff." Plaintiff also alleged that the statements contained in the communications addressed by the defendant, Liquid Veneer Corporation, were "false, malicious and untrue, and were made only for the purpose of destroying the good name and reputation and business of this plaintiff, and that by reason of the said false, malicious and defamatory publication aforesaid, plaintiff has 'been damaged * * * in the sum of $100,000."

Early in the trial of the case the plaintiff sought to introduce evidence of damages resulting from letters other than the one to the Young's Market set forth in the complaint. The defendant consistently objected to such evidence, but the court construed the complaint as broad enough to include damages resulting from letters written prior to June 1, 1931. The situation at the time of the trial may be illustrated by one or two quotations from the record. When the objection was first made that damage resulting from other letters could not be shown, the court very properly said: "My view is you may set out a million charges of libel but unless you attribute your damage to them you cannot claim damage because of them. You can show

motive and all that, but in your paragraph IX it is a question whether you have not confined yourself to the one letter of 1931." To this the plaintiff replied: "Well, clearly we have not, your Honor. 'That the statements contained in the communications addressed by the defendant, Liquid Veneer Corporation.' Now, if you refer back to paragraph VI we say 'Letters.' We do not say 'Letter.'"

After further discussion the court said: "In the absence of a specific objection heretofore made as to what was included, or an analysis of this complaint, I would feel compelled to say that the basis of damage may reasonably be held to include all of the previous letters. Undoubtedly, I think that was the intention.

"Mr. Balter: That was the intention."

On this basis the court overruled the objection and received evidence of damages resulting from letters written to the May Company as early as 1928.

In this connection it should be observed that the statute of limitations of California runs against a libel after the expiration of a year. Code Civ.Proc.Cal. § 340. The defendant had not pleaded the statute of limitation and did not make that specific objection, but if the objection made was well taken it was unnecessary either in pleading or in objection to raise the question that evidence concerning damages which had accrued more than a year before the bringing of the action was inadmissible because barred by the statute of limitations.

The difficulty I find in agreeing that the error in admission of evidence as to damage from previous letters was cured by the instruction of the court that they should only consider evidence of damages resulting from the letter of June 2, 1931, set out in the complaint, results from the fact that there is no attempt in the evidence to segregate damages resulting from prior letters and damages resulting from the letter sued upon and no basis upon which the jury could intelligently separate damages which had accrued because of other libels and damages resulting from the libel sued upon. This situation will be illustrated through excerpts from the testimony.

Plaintiff testified that originally she had about 2,000 customers in Oregon, Washington, and California, and that when "they started getting these threatening letters my business just fell down to prac-

tically nothing. I decided to stay right in California and then when the California customers got those letters they fell off one at a time." She stated that before the customers began to fall away she had a mail order business in California of between 25 and 50 letters a day. She testified that for the first few years she was in California her business amounted to about $1,000 a month; that her product cost only one-fifth the sales price; that her gross business in the year 1928 was "between three and four hundred· dollars a month, and then in 1929 it had fallen down, and in 1930 and 1931 it had almost completely fallen down." She stated she made trips to all the Southern California counties and that "up until the year about 1930 * * * 1929 and 1930, and then when I would go out and these customers would say, 'I can't buy,' I just lost heart in it and I just quit because ·it is an expense to travel when you are not making anything."

As far as appears from the record the only direct results from the libelous letter addressed to Young's Market was the cessation of business with that customer. There is no evidence as to the extent of this business except the general statement of witness William P. Waddington that: "I have never at any time found anything that came onto the market as quickly as this French Veneer. * * * At the time we received this threatening letter our sales on French Veneer were far out-selling any other polish that we had in the house, and it just was like cutting it off with a knife; it stopped all at once as a result of this letter."

It is clear that the jury could not estimate the damages to the plaintiff· resulting from the letter to Young's Market without some evidence as to the volume and extent of the business. In other words, there must have been some proof of the loss. ·The appellee does not attempt by her brief to estimate the amount of damages due to the letter of June 1, 1931, but makes a general charge of damage due to the destruction of her entire business. I quote from the brief in that regard as follows: " * * * this case will go down in the annals as one of the most vicious examples of a planned and malicious program of destruction by a large influential business concern of ·a weak competitor who because she had a good product and worked hard was able to corner for herself a tiny share of the business which defendant could not bear to see taken from it by honest means."

In view of the failure of the evidence to segregate the damages due to the letter of June 1, 1931, from that resulting from the other letters introduced in evidence, I cannot see how an instruction to the jury that they should disregard the evidence of damages resulting from the other letters introduced in evidence would cure the error. Moreover, the instructions permitted the jury to give punitive damages. The evidence regarding the damage suffered by reason of the prior sales was not clearly and definitely withdrawn from the jury in their consideration of punitive damages, as will appear from additional instructions as to damage, stated in the margin.[1]

The amount of damages awarded by the jury is disproportionate to the injury claimed to have resulted from the specific letter set up in the complaint. It is difficult to avoid the conclusion that the jury was attempting to make an award for the

[1] "With respect to damages the law provides that for the breach of an obligation not arising from contract—that in this case, what the plaintiff claims to be—the measure of damages is the amount which will compensate for *all* the detriment proximately caused thereby, whether it could have been anticipated or not. In other words, the *damages must be such*, in the event you· should find a verdict for the plaintiff, that are proximately, that is, directly, caused by the *acts* of the defendant.

"In addition thereto, however, gentlemen, the law in this state and, I guess in every state, provides for what are known as exemplary damages that mean something different from actual damages.

"In an action for the breach of an obligation not arising from contract, such as is charged in this case, where the defendant has been guilty of oppression or fraud or malice—and in this case it would mean express malice—the plaintiff *in addition to actual damages* may recover damages for the sake of example and by way of punishing the defendant.

"If, now, you think that this method used by the defendant was engendered and rested in the purpose to destroy the business of the plaintiff, was done and made with ill-will toward the plaintiff, or accompanied and did itself consist in an act of oppression, then you are at liberty to award exemplary damages; that is, exemplary as opposed to. compensatory,

loss of her business and that while not making the award which would compensate for the loss of net revenue of $7,200 a year, it had reduced the amount of damages because the depression began the latter part of 1929 and continued during the period involved in this action.

I do not believe the appellant had a fair trial on the question of damages in view of the contradictory ruling of the trial judge on that subject. I think the judgment should be reversed.

*meaning damages that are to reimburse for actual loss suffered,* and you may award exemplary damages, that is, damages by way of example.

"You take the case with you. You are not controlled by any opinion that the court directly or inferentially may have expressed. You are not to be governed by passion nor prejudice, but consider the case carefully, gentlemen, and if, in the event you find for the plaintiff, you may consider those two features and fix the amount at such as you think in the *one case she has actually suffered,* and in the other case that she should be awarded by reason of and in the way of exemplary damages." (Italics ours.)