## COMPAGNIE GENERALE TRANSATLANTIQUE v. TAWES.

### No. 9080.

Circuit Court of Appeals, Fifth Circuit.

April 12, 1940.

Rehearing Denied July 8, 1940.

Geo. H. Terriberry, Jos. M. Rault, Walter Carroll, and Benjamin W. Yancey, all of New Orleans, La., L. S. Carrington, of Ancon, C. Z., and Octavio Fabrega, of Panama, Rep. of Panama, for appellant.

William A. Van Siclen and J. J. McGuigan, both of Ancon, Canal Zone, for appellee.

Lucian Y. Ray, Atty., Department of Justice, of Washington, D. C., for the United States.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

On February 17, 1935, the appellant's steam vessel Wisconsin was grounded while navigating the Panama Canal in charge of appellee as pilot. The Governor of the Panama Canal, the Panama Canal, and the pilot were sued in the District Court of the Canal Zone to recover the cost of refloating her, but the Governor and the Panama Canal were held not subject to suit. Compagnie Generale Transatlantique v. Governor of Panama Canal et al., 5 Cir., 90 F.2d 225. The case went to trial against the pilot only as an action at law for negligence, and the jury found for the defendant. On this appeal it is urged that the evidence demanded a contrary verdict, and two charges of the court are urged as erroneous.

The Canal Regulations, Chapter 4, Rule 26, require a vessel· passing through the Canal to have a . Panama Canal pilot on board; and Rule 30 declares: "The pilot shall be consulted freely at all times to insure safety in navigation, 'and no master, officer nor other person connected with the vessel shall give or cause to be given any order concerning the movement of the vessel without the knowledge of the pilot or against his advice." Appellee as the Canal pilot assigned to the Wisconsin was thus in charge of her navigation. There is no allegation nor proof that he was incompetent, but only that he did not on this occasion act with due care and skill, the specific allegations being that (a) he failed to observe a signal at Darien warning of fog in the Canal; (b) he failed to anchor when overtaken by a fog so. dense as to shut out visibility and render navigation dangerous; (c) he failed to reverse the engines and send the vessel astern when warned by the chief officer of the vessel that she was heading towards land; (d) he negligently operated the vessel through a fog so dense he could not see the channel; and (e) acted contrary to a rule of

the Panama Canal, Chapter 6, Rule 58: "A vessel underway when overtaken by thick or foggy weather, or rain so dense as to obscure vision, shall immediately take every precaution necessary for safety and anchor or moor at the first available place." The answer denied most of the allegations of the petition and all the charges of negligence.

Charge of negligence (a) is unimportant. Whether the fog signal was observed or not, it was well known otherwise that patches of fog were on or about the Canal. Three of them were entered, and the vessel was anchored till they passed off, before encountering that which resulted in the stranding. The fog signal was only a fog warning. It does not prohibit passage through the Canal.

■ The remaining charges of negligence may be considered together, the evidence being stated most favorably to the verdict where it is conflicting. According to the pilot: "After the third anchorage the weather cleared again and we swung around to a course of 102° down the San Pablo Reach. The weather had now gotten good and clear. * * * We put the vessel on half speed. As we proceeded down the Reach one of the ranges was obscured by a patch of fog * * * but the front range of the San Pablo Reach was in view. * * * We could check up from the rear ranges and in that way could continue on. However before arriving at the Mamei turn I suggested to the Captain that we should put the engines on slow speed. I said: 'We are liable to get into any kind of weather after we make the turn', and the Captain said: 'All right.' The weather was now clear to proceed. * * * Between Buoy 71 and 73 there was a breeze blew up which overcame the vessel. I then ordered left rudder on the ship. There was nothing to be seen due to a dense fog which had blown from the land." "Abreast of Buoy 71 the weather was clear. Visibility became obscured within five seconds. The breeze blew the fog over the ship right off from the land." The Mamei turn was to the left from a course of 102° to a course of 51°. The channel was 700 to 800 feet wide, and the ship 470 feet long. The fog came just as she began to swing to the left. Unable to see anything, the pilot ran into the wheel house and learned from the compass that the vessel was not answering the helm very well, the swing being then only to 81°. The rudder was put hard left.

Someone shouted from the forecastle in French that there was land ahead, but the pilot did not understand him. The Captain suggested putting the engines full speed astern, but the pilot judged otherwise. Very soon the bow of the vessel struck the right bank of the Canal, she having failed to make the turn to the left soon enough to keep or regain the channel. The ship's officers estimate the time between the coming of the fog and the stranding at one and a half minutes. The pilot thought it less. He testifies that there was no unskilfulness in his handling of the ship; that he did the right thing, after finding she was not swinging fast enough, in ordering the rudder hard left, and not attempting either to anchor or reverse the engines, or to give them more speed forward. He considered all these things and decided against them. More speed forward would have made her answer her helm better, but not knowing how far the right bank was away he concluded there might not be space to clear it, and the greater speed would be more apt to injure the vessel if she grounded. Reversing the engines would not stop her within her length, and she having a single right-hand propeller, to reverse its motion would throw the stern to the left and tend to point the bow into the bank. Anchoring could not have checked the vessel at once, and she would be likely to run over the anchor in shallow water and cause it to punch a hole in the hull. The pilot's judgment then and afterwards was that it was best to hold her hard left with what speed she had, hoping to swing her around the bend in time. We think the jury could reasonably approve his conduct as not negligent. Rule 58 does not require instant anchoring in a fog. It does require "immediately taking every precaution for safety," which may include signals, lookouts, speed cessation, and the like. The rule says: "Anchor or moor at the first available place", recognizing that some places may not be available. This pilot thought the shallow water in the path of his ship still under way was not an available place at the moment. There was room for the exercise of judgment.

■■ The court instructed the jury on the pilot's duty to exercise ordinary care generally and to observe Rule 58 as to anchoring. He then instructed the jury that if the pilot while so exercising ordinary care and skill was suddenly overtaken

by a fog so thick and dense that navigation aids were obscured and he could not by ordinary care have anticipated this situation, and that when confronted with it he then exercised ordinary care and skill for the safety of the vessel and to prevent grounding of the same, but by the use of ordinary care and skill he was unable to do so, then the law is for the defendant and the jury should so find. An objection urged to this charge is that it introduces a defense of inevitable accident which was not pleaded and must be pleaded to be availed of in admiralty. Without examining the necessity of a special plea in admiralty proceedings, we hold this to be a case where a remedy was sought at law. The pleading was under Canal Zone Code, Title 4, Sec. 221, which requires the answer to contain a general or specific denial of the material allegations of the complaint which are controverted by the defendant; and a statement of any new matter constituting a defense or counterclaim. The answer specifically denied all the charges of negligence and the facts on which they rested. There was no new matter constituting a defense or counterclaim. The evidence was directed to the issues as to what did happen, and the charge was appropriate to the evidence. We do not find that it introduced any new or unpleaded defense, or that it was in any way calculated to confuse the jury, or to contradict the previous instructions about the applicability of Rule 58.

▆▆ The other instruction complained of contained these words: "If after considering all the evidence your minds are left in a state of reasonable uncertainty as to whether the plaintiff is entitled to recover, your verdict should be for the defendant." This does not accurately state the burden which the plaintiff was required to bear, which was to prove its case by a preponderance of the evidence. They might be construed to mean that all reasonable doubt must be removed. Compare McBee v. Bowman, 89 Tenn. 132, 14 S.W. 481; Randall's Instructions to Juries, Sec. 247. But the court in the next preceding sentence gave the correct rule thus: "The burden of proof in this case is upon the plaintiff, and unless you are reasonably satisfied by a preponderance of the evidence that the plaintiff is entitled to recover, you should find for the defendant." Immediately following the criticised words he continued: "The term preponderance of the evidence does not necessarily mean the testimony of the greater number of witnesses, although everything else being equal it may have that meaning. It means rather the greater weight of the testimony as shown by all of the facts and circumstances in evidence. * * * It is that evidence which carries the most conviction in your minds, and that enables you in the light of your general knowledge of men and affairs to say what is the truth concerning any issue in dispute." Taking the charge as a whole, we think it unlikely that the jury failed to understand that the preponderance of the evidence was what should govern them. Danzansky v. Zimbolist, 70 App.D.C. 234, 105 F.2d 457. Furthermore the objection made was general, and did not point out to the judge the inconsistency now complained of. We think no reversible error is shown. Royal Finance Co. v. Miller, 9 Cir., 47 F.2d 24.

The judgment is affirmed.